## MATTIE WOOD, Respondent, v. MILES R. FLANERY, Adm'r, etc., Appellant.

### Kansas City Court of Appeals, June 3, 1901.

1. **Contracts: PARENT AND CHILD: CONSIDERATION: PROMISSORY NOTE: BURDEN OF PROOF.** Where a child performs services for a parent, they are presumed to be gratuitous, and to recover, the child must show an expressed or implied promise to pay for the services; but they are valuable, and if the parent gave the child a promissory note for them, the note implies a consideration and the administrator must show a failure of consideration.

2. **Bills and Notes: DELIVERY: ESCROW.** F executed a note to her daughter and gave it to C in an envelope to deliver to S. At the same time she delivered to C a letter for the daughter. He was instructed to keep these papers until the parties named called for them, or if they did not call to notify the parties in case of the maker's death. He delivered the papers as directed. S was instructed to have the note allowed against her estate. The note came to the daughter's hands from S after the mother's death. *Held*, there was a delivery of the note to the daughter who could maintain an action thereon.

3. **Administration: JURISDICTION: AFFIDAVIT TO DEMAND: RECORD.** Where the record is silent as to whether the affidavit required by the statute was attached to a demand or not, it is presumed the statute was complied with and the court had jurisdiction.

4. **——: JUDGMENT: ERROR.** Where a judgment in the circuit court, on appeal from the probate court, awards execution against the administrator, it was erroneous and will be set aside, and this court will enter a proper judgment.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates,* Judge.

AFFIRMED.

*John A. Sea* and *George W. Bruce* for appellant.

(1) Before respondent could recover herein she must have shown that a debt existed between decedent, Martha Flanery, and said respondent. A debt is a sum of money due by certain and express contract. 8 Am. and Eng. Ency. of Law (2 Ed.), p. 986. (2) It is claimed that the note was given in payment of a debt. To constitute payment of a debt by note or check, there must be a positive agreement to that effect. Montgomery Co. v. Auchley, 103 Mo. 492, 502. There must have been a special agreement for the note to have extinguished the debt. Steamboat v. Hammond, 9 Mo. 59, 62; Bank v. Carson, 32 Mo. 191; Selby v. McCullough, 26 Mo. App. 66, 72; State ex rel. v. Wagers, 47 Mo. App. 431, 438; Land Co. v. Rhodes, 54 Mo. App. 129. (3) To have been a payment, there must have been both a delivery by decedent and an acceptance by respondent, with the purpose on the part of decedent to part with, and of respondent to accept of the immediate ownership of the note. Letter shows there was no intention to turn over note until Mrs. Flanery's death. "I will leave it with the doctor if I die." "You will not get this until I am dead two or three months." Thompson v. Kellogg, 23 Mo. 281. (4) There must have been a positive agreement to that effect. Montgomery Co. v. Auchley, 103 Mo. 492, 502; Shotwell v. Munroe, 42 Mo. App. 669; State ex rel. v. Wagers, 47 Mo. App. 431; Steamboat v. Hammond, 9 Mo. 59, 63; Bank v. Carson, 32 Mo. 191, 196; Land Co. v. Rhodes, 54 Mo. App. 129. (5) If note was made without express agreement that it should have been received in payment of a debt, then there could be no delivery such as would render the note valid against decedent's estate. Authorities cited under point 4 supra. (6) Service, if any rendered, was between parent and child. The presumption is,

that service was not to be paid for. Woods v. Land, 30 Mo. App. 176; Lawrence v. Bailey, 84 Mo. App. 107. (7) Burden was on respondent to show a state of facts overcoming the natural presumption, that she did not intend to charge for such services. Kostuba v. Miller, 137 Mo. 161, 175; Erhart v. Diedrick, 118 Mo. 418; 17 Am. and Eng. Ency. of Law, (1 Ed.), 336; Lawrence v. Bailey, 84 Mo. App. 107. (8) In order to be paid for, it must be so understood on both sides at the beginning of the service. Woods v. Land, supra; Louder v. Hart, 52 Mo. App. 377; Kostuba v. Miller, 137 Mo. 161. (9) The two paper writings offered in evidence (the alleged note and letter), respondent claims were made by one person, executed and delivered together, related to the same subject-matter and were for one and the same general purpose. If this be true they constitute but one instrument and are to be read and construed as such. Sexton v. Anderson, 95 Mo. 373; Jennings v. Todd, 118 Mo. 296; Water Co. v. City of Aurora, 129 Mo. 540. (10) If so read they show on their face that they were intended to take the place of a will, and were testamentary in their character. Dunn v. Bank, 109 Mo. 90, 98; In re Soulard Est., 141 Mo. 642. (11) This cause was begun in the probate court. There is no evidence that the statutory requirement, i. e., the oath in open court or the affidavit, "that plaintiff had given all credits," etc., was ever complied with. Unless complied with the probate court had no authority to allow the claim; was without jurisdiction. R. S. 1899, sec. 195; Stiles v. Smith, 55 Mo. 363, 368; Williams v. Gerber, 75 Mo. App. 18, 30. (12) The judgment rendered in this cause is erroneous. R. S. 1899, sec. 191; Branson v. Branson, 102 Mo. 613.

*H. A. Jones* and *John W. Clements* for respondent.

Wood v. Flanery.

(1) A note may be effectively delivered by a delivery to a third party to be delivered to the payee on the maker's death. 1 Daniel Neg. Inst. (2 Ed.), sec. 68; 4 Am. and Eng. Ency. (2 Ed.), p. 203; n. 4 and cases cited; Giddings v. Giddings, 51 Vt. 227; 31 Am. Rep. 682; Worth v. Case, 42 N. Y. 362; North v. Case, 2 Lans. N. Y. 262. (2) The delivery of a note is essential to its validity; but such delivery may be constructive, and it is sufficient if the maker, after executing the note, holds it for the payee and as her agent. Welch and Harvey v. Dameron, 47 Mo. App. 221; School District v. Sheidley, 138 Mo. 688. (3) The delivery, however, need not be made to the grantee in person. (4) The rule that the grantor must part with all dominion and control over the deed does not mean that he must put it out of his physical power to procure repossession of it. Sneathen v. Sneathen, 104 Mo. 202. This same rule should apply as to a note likewise placed in escrow. (5) An unconditional delivery to a third person will be good if assented to by the grantee, either before or after the death of the grantor. Allen v. DeGroodt, 105 Mo. 442; Williams v. Latham, 113 Mo. 165. (6) There is no doubt that the delivery of a deed, or note, to one person in favor of and for the benefit of another, constitutes a binding and valid delivery as against the party who delivers it and his legal representatives, whether the party in whose favor it is delivered is aware of it or not. In re Est. of Soulard, 141 Mo. 663; Worth v. Case, 42 N. Y. 362. We are perfectly satisfied that a careful examination of the record in this case, will convince this court that the judgment of the circuit court was manifestly for the right party. Appellant makes the point "that there is no evidence that the statutory requirement, i. e., the oath in open court, or the affidavit that plaintiff had given all credits, etc., was ever complied with." This affidavit may be taken orally, in open court, and is not necessarily noted on

the record. Kincheloe v. Gorman's Adm'r, 29 Mo. 421; 3 Mo. App. 587. If there is no evidence that the statutory affidavit or oath in open court, was made, there is, on the other hand, certainly no proof that it was not made. Hence, it is presumed to have been made.

BROADDUS, J.—This case originated in the probate court, was appealed to the circuit court and brought here on appeal by the defendant. The plaintiff is a daughter of the deceased, Martha Flanery, who filed in the probate court for allowance against her mother's estate a note purporting to have been made by the deceased for $1,250, payable to the plaintiff, dated May 5, 1898, and due one year after date.

It appears from the evidence of Dr. Cundiff, who was a physician and surgeon living in Pleasant Hill, Missouri, and who had known the deceased Martha Flanery since 1864, that in May, 1898, said Martha Flanery, deceased, left with him two papers, or, as he states it in another way, "two envelopes that were sealed." One of these envelopes was addressed "Mattie Woods," the other "Martha Flanery papers." He says that Mrs. Flanery requested him to deliver these papers in the presence of witnesses. He delivered the one addressed to Mattie Woods, to her, in the presence of Dr. J. W. Smith and W. D. Kirkpatrick on the twenty-first day of March, 1899. This envelope was opened on said day in the presence of the two persons named; it contained a writing which he said was "about the size of a letter." He did not read it, but "heard Mrs. Woods read an extract from it, or say what was in it." He testified that when the deceased delivered these papers to him she instructed him "to keep them until the parties named should call for them, or, if they did not call for them, in case of her death notify them that I had these papers." The other paper was to be delivered to Dr. J. W. Smith or John R.

Finter, which he did deliver to Dr. Smith, also on the twenty-first of March, 1899, in the presence of W. D. Kirkpatrick. This paper or envelope he testified was at said time opened and contained the note in controversy. This question was then put to the witness: "Doctor, state whether or not Mrs. Flanery, at the time she left these papers with you, said anything to indicate any intention on her part to possibly recall them during her lifetime?" Answer: "She did not." He saw deceased afterwards on the street in Pleasant Hill, about the middle of October, 1898, and testified that she then said to him: "Hold on to those papers I gave you, and do as I instructed you in reference to them." He says that the plaintiff was close enough to have heard what was said. He states that Mrs. Flanery died in the winter of 1898 and 1899. W. D. Kirkpatrick confirms Dr. Cundiff as to the delivery of the papers to plaintiff and to Dr. Smith.

Dr. Smith testified as to the delivery of the two papers, one to himself and the other to the plaintiff. He was able to identify both. The letter in the envelope which was delivered to plaintiff is as follows:

"May 5, 1898.

"Dear Mattie: I am getting old and do not know how long I am going to live and it is time I am fixing my business up in shape. I want to pay you for staying with me and taking care of me. I will pay you for ten years' work it is yours; you have earned all I will allow you. I will allow you $2.25 a week because you fed yourself it was my place to feed you but I didn't that is allow $1.50 for your work and a dollar and a quarter for feeding yourself I could not get any one cheaper and no one would be good to me like you was. I don't care what the children say it is mine I have worked for all I have got they didn't work for it. I could not have lived without you

since your pa died Gim is gone to war and left me you have staid with me.   I will sign a note and leave it with the Dr. if I die.   You will not get this till I am dead two or three months.   I will tell the Dr. what I want him to do I will leave a sealed letter with him.   You will have to bring Mr. Finter or Dr. Smith because I told him not to give the sealed letter up but give it to the one that come with you I don't want you to have the note for the children might get the note from you but the one that comes with you keep the note and put it in against the estate I don't care whether there is anything left after my debts are paid or not the children will not thank me. Some of my children could have company but I was not good enough to go.   So now I can do as I want with my own.   You have always been good to me I am not giving you anything you have earned all I allowed you I would allow you more if I had of got my pension.

"Your mother,<br>
"MARTHA FLANERY."

James Flanery, a son of the deceased, testified among other things that his mother told him what she had done.   His evidence in substance is, that about the twenty-fifth of April his mother said to him:   "Something tells me I ain't going to live long. * * * I ain't never paid Mattie anything for staying here. * * * I'd fix a will, but I am afraid it would be broken. * * * I am going to fix it some other way."   In September, afterwards, she said to him that she had allowed Mattie for ten years' work, and put a note—left a note in Mr. Cundiff's hands.   She told him it was for ten years' work—$1,250. This witness also stated that he was present when the arrangement was made between the plaintiff and deceased for the plaintiff to reside with and work for his mother, Mrs. Flanery. This statement is that his mother told plaintiff, who was living

up-stairs in the same house with her, "to move down stairs and all eat together, each one to furnish their part of the victuals," and the deceased said: "I want you to do my work. I don't ask you to do it all. I will pay you for it." This was in 1886.

There was evidence on the part of the defendant that the handwriting of the name of Mrs. Flanery to the note was not genuine. There was also evidence upon the part of the defendant tending to show that the plaintiff did but little if any work for her mother. There was evidence also to the effect that the deceased had a crippled hand and was afflicted with the rheumatism and that she more than once said that she did not know how she could get along without the help of the plaintiff. There was much evidence to the effect that the deceased placed a high value on the help of the plaintiff for the ten years preceding her death. There was a great amount of evidence in the case, but it is not necessary to repeat it here.

It is necessary, however, as will appear hereafter, to set forth that Dr. Cundiff's testimony further developed the fact that plaintiff was present on more than one occasion when deceased was talking about her affairs in which she spoke of paying plaintiff for her services, and that he did not go to plaintiff to deliver the letter but she came to him for it in company with Dr. Smith, who received the note.

The finding was for the plaintiff for the amount of the note and interest, less the counterclaim set up by the administrator against the plaintiff for $100. The court gave six instructions on behalf of the plaintiff, nine in behalf of the defendant, and refused six others asked.

The theory of the instructions on both sides, as to what it would take to constitute a consideration for the note, harmonizes, and the jury were told that they must find that there had been a contract between plaintiff and the deceased, that the

plaintiff was to move into the house with deceased and was to work for her, for which she was to be paid.    They were told that if she was to work for her mother and there was no promise to pay her on the part of the mother, the note was without consideration.    But as the note imported a consideration on its face, the burden was upon the defendant to show that it was without consideration.    The instructions in that respect were most favorable to the defendant and appellant.    The defendant is treating the case here as he did in the court below: That this is a suit by a daughter against the mother for services; whereas, it is a suit on a promissory negotiable note clothed by every intendment of the law with the presumption of a valuable consideration.    The defendant contends that the burden was upon the plaintiff to show a state of facts overcoming the natural presumption that she did not intend to charge for such services, and cites authorities to support that view. These authorities have no application here, for, as said before, she is not suing on a contract for services, but is suing on a note; and the burden is on the defendant to show it is without consideration.

Notwithstanding the case was tried upon the theory that unless there was an agreement that plaintiff was to be remunerated for her services there was no consideration for the note, we do not want it understood that we approve of it as a correct statement of the law as applicable to the facts of the case. But, as the court and the parties to the suit tried the case upon that theory, we will not disturb the finding for that cause. The better view of the law is, that if the services had been rendered, whether by agreement they were to be paid for or not, they were valuable, and would as such be a sufficient consideration for after-promise in writing to pay for them.    Because the law presumes that services rendered by a daughter for a mother, while living with her, to be gratuitous in absence

of proof of a contract for remuneration made during or before their rendition, would not prevent the mother from paying her at any time thereafter, and the execution and delivery of a note, afterwards, based upon such services for a consideration, would overturn the presumption. The note in suit, if delivered, is itself proof of a hiring by the mother of the daughter, if shown that such hiring was the consideration thereof. If the execution and delivery of the note had been proved, and that was as far as the burden of proof rested upon the plaintiff, the burden shifted to the defendant to show that the note was without consideration. We are not aware of any rule of law that requires the payee of a negotiable promissory note to assume the burden of showing that the note was given for a valuable consideration. The note imports a consideration. The law merchant—public policy—clothes it with a consideration.

But the case mainly rests upon the question of delivery. It is contended by the appellant that there was no delivery and acceptance in law, of the note. In 1 Daniels on Negotiable Instruments, section 68, the rule is laid down: "A bill or note as well as a deed may be delivered to a third party as an escrow, to hold until a certain event happens, or certain conditions are complied with, and then the liability of the party commences as soon as the event happens, or the conditions are fulfilled, without actual delivery by the depositary to the promisee. And it matters not that the actual delivery is not designed to take place until after the death of the promisor; the instrument, whether negotiable or otherwise, is nevertheless valid." In Giddings v. Giddings, 31 Am. Rep. 682, we find the principle laid down in a case somewhat similar to the one at bar, viz: "G, wishing to pay to each of his three nephews a third part of their father's interest in his mother's dower estate, which

G had enjoyed, but recovery of which had been barred by the statute of limitations, and also wishing to make each a gift, having declared to them his purpose so to do, drew three promissory notes, payable one to each, in one year after his death, intending to leave them in the hands of some third person, subject to his own control, to be delivered after his death, if he should not retake them, or otherwise direct." He placed the notes in an envelope addressed to his nephews and delivered same to F, with directions as to their custody. He died without having retaken them. After his death F delivered them to the nephews. It was held to be a valid delivery and for a valuable consideration.

In the case at bar the note was sealed up and delivered to Dr. Cundiff, to be delivered after the death of plaintiff's mother to Dr. Smith—who was, as shown by the letter from deceased to plaintiff, to have it proved against her estate. The evidence to the effect that the plaintiff and Dr. Smith went to Dr. Cundiff at the same time for the letter and note was, if true, incontestable proof that the plaintiff had been made acquainted by the decedent of her intentions to execute the note and deliver it to Dr. Cundiff for her. From all the evidence, there was little or no doubt but what deceased signed her name to the note. We are forced to the conclusion that there was a valid delivery of the note. It follows, therefore, that the acceptance of the note amounted to an extinguishment of the claim plaintiff held against the decedent's estate; and that it was intended as a payment of the same.

We fail to see any foundation for the defendant's contention that his motion to dismiss should have been sustained on the ground that Dr. Smith was the proper party plaintiff to maintain the suit. He had no interest in the controversy.

It is further contended that the court had no jurisdiction, for the reason that the record does not show that plaintiff had

made oath to her claim in the probate court as required by section 195, Revised Statutes 1899. The record does not show whether the statute had been complied with in that respect or not. It is silent. It was held in 3 Mo. App. 587, that in the absence of proof to the contrary, the presumption would be that the statute had been complied with. In Fath v. Meyer's Adm'r, 27 Mo. 568, the court in passing upon the status of the case held: "It does not appear that the preliminary oath required by the statute to authorize allowances against an estate in the county court, was called for in the trial of this case, or that any objection was made on this ground. After a plaintiff has established his demand, contested as this was, by the verdict of a jury, and the judgment of the circuit court thereon, it would seem folly to send the case back for the plaintiff's oath to be superadded." See, also, Kincheloe v. Gorman's Adm'r, 29 Mo. 421. These cases are peculiarly applicable to the case at bar, and are controlling upon the facts as shown by the record.

It is further claimed that the motion in arrest of judgment should have been sustained, because said judgment is a general judgment awarding execution. That the same awarding execution to the plaintiff is improper and not warranted by section 192, Revised Statutes 1899. It is, therefore, set aside and the following judgment entered, to-wit: It is, therefore, adjudged by the court that the plaintiff have and recover of the defendant the sum of $1,361.11, being the amount of damages in favor of the plaintiff, after allowing defendant's counterclaim for $100. Said judgment to bear eight per centum interest per annum, and the same is ordered certified to the probate court of Jackson county, Missouri.

Finding no error authorizing a reversal, the cause is affirmed. All concur.