MINNIE McMORROW, Respondent, v. DOWELL, Administrator, Appellant.

St. Louis Court of Appeals, November 28, 1905.

1. **SETTLEMENT.** The fact that a party claimed and recovered certain personal property from one, afterwards deceased, does not constitute a settlement so as to bar a claim by the same party for other chattels which were not recovered at the same time, or a claim for compensation for services rendered the deceased in the latter's lifetime.

2. **MASTER AND SERVANT: Member of Family: Burden of Proof.** Where a party sues to recover compensation for services rendered to promote the welfare of a family of which he is a member, the burden is on him to prove that there was a contract, express or implied, to pay him for such services.

3. ———: ———: **Gratuitous Services.** But if such service is rendered where the family relation does not exist, the burden is on the party who accepts the service, to prove that it was rendered gratuitously; otherwise a contract for compensation will be implied.

4. ———: ———: **Agreement to Pay Inferred from Circumstances.** Where services are rendered by a member of a family for the benefit of the family, an agreement to compensate for such services may be deduced from circumstances and need not be shown by direct proof.

5. **PARENT AND CHILD: Earnings of Child: Emancipation.** That a parent has emancipated a minor child and waived his right to its earnings may be shown by his conduct, and such waiver by conduct may occur while the services are in progress as well as before, or at the time they began.

6. ———: ———: ———. Where the mother of a girl four years old took her to the home of another, and allowed her to live there until she was grown, without making any demand for remuneration for the child's services, and, in an action by the child for compensation for such services, testified to facts tending to show a contract between the child and the other, that the child should be compensated for such services, these circumstances show conclusively a waiver by the mother to the earnings of the child.

116 App—19

7. MASTER AND SERVANT: Member of Family: Contract for Compensation. In an action against an estate for services rendered by the plaintiff to the deceased in the lifetime of the latter, where the testimony tended to show that the plaintiff was a member of the family of the deceased, a statement made by the deceased to the mother of the plaintiff when the plaintiff, then a child four years old, went to live with the deceased, to the effect that she, the deceased, "would take the child and do good part by her" would not constitute a contract express or implied upon which the plaintiff could recover for such services.

8. ———: ———: ———: Instructions. In such case to instruct the jury authorizing recovery upon an express contract, without excluding from consideration, such statement, was erroneous.

9. WITNESS: One Party to Cause of Action Dead: Parent and Child. In an action against an estate for services rendered to the deceased during the lifetime of the latter, where the evidence tended to show that plaintiff was a member of the family of the deceased, the mother of the plaintiff under section 4652, Revised Statutes of 1899, was an incompetent witness to testify to an express promise, made by the deceased to the witness at the time plaintiff, then a minor child, went to live with the deceased, that the plaintiff should be compensated for her services.

10. ———: ———: ———: Emancipation. But where the statement of the deceased in such case was that she "would take her, the plaintiff, and do good part by her," it was competent for the mother to testify to the statement for the purpose of showing that the witness had emancipated the child.

11. ———: ———: Instruction. In such case the jury should have been instructed that they should not consider the testimony of the mother upon that point as evidence of an agreement to pay plaintiff, but only upon the issue of whether the mother waived her right to plaintiff's services.

12. ———: ———. In such case the mother was a competent witness to testify to conversations had with the deceased, tending to show an express agreement to which witness was not a party to pay the plaintiff for her services.

13. ———: ———: Waiver. The mother in such case was not disqualified as a witness on the ground that the question of her waiver of her right to her child's services was an issue, because the issue was a collateral one and no part of the contract sued on.

Appeal from Pike Circuit Court.—*Hon. David H. Eby,* Judge.

REVERSED AND REMANDED.

*George W. Emerson* and *Tapley & Fitzgerrell* for appellant.

Mrs. Levy was not a competent witness for the reason that at the time plaintiff claims the contract for hire was made the plaintiff was of such tender years she was incapable of contracting. And if the contract was made which Mrs. Levy testifies to, it was made between Mrs. Levy and Mrs. Roberts, and Mrs. Roberts being dead, Mrs. Levy was incompetent as a witness. Ashbury v. Hinklin, 81 S. W. 390, 181 Mo. 658; Banking House v. Rood, 132 Mo. 256, 33 S. W. 816; Eyermann v. Piron, 151 Mo. 107, 118, 52 S. W. 229; O'Bryan v. Allen, 108 Mo. 227, 18 S. W. 892. The demurrers to the testimony should have been sustained. There was no contract proved nor such facts and circumstances shown from which one could be inferred. All of the testimony shows she was living with the deceased Mrs. Roberts as a member of her family. Kinner v. Tschirpe, 54 Mo. App. 575; Brock v. Cox, 38 Mo. App. 40; Penter v. Roberts, 51 Mo. App. 222; Lawrence v. Bailey, 84 Mo. App. 107; Bittrick v. Gilmore, 53 Mo. App. 53; Callahan v. Riggins, 43 Mo. App. 130; Wood v. Land, 30 Mo. App. 176. Where the family relation exists whether of kin or not the same rule applies which is that services performed were a gratuitous kindness. Cowell v. Roberts, 79 Mo. 218. There was no waiver of the cause of action by Mrs. Levy, prior to the filing of the suit not prior to the time for which the services are claimed and this plaintiff can not recover. Matthews v. Railroad, 26 Mo. App. 83; Mauerman v. Railroad, 41 Mo. App. 348; Dooley v. Railroad, 45 Mo. App. 311.

*J. D. Hostetter* and *Elliott W. Major* for respondent.

"In order for a claimant to recover in this class of cases it is necessary to show by the evidence and circumstances either an express or an implied contract to pay and intention to charge for the services at the time. This is the law of every such case no matter whether the parties are strangers or members of the family. The only difference being, that if members of the family, the law presumes the services were gratuitous, and if strangers no such presumption arises. This presumption or inference as to members of the family is not a conclusive one, but may be overcome by evidence of an express agreement to pay or reasonably implied from the attendant facts and circumstances. The triers of the fact may from the circumstances and the evidence infer a promise to pay and an intention to charge, and these presumptions and inferences are questions purely for the jury." Lillard v. Wilson, 77 S. W. 74; Fall v. Jones, 81 S. W. 455; Bosard v. Powell, 79 Mo. App. 186; Ronsiek v. Admr., 63 Mo. App. 421; Ramsey v. Hicks, 53 Mo. App. 195; Erhart v. Dietrich, 118 Mo. 430, 24 S. W. 188; Sprague v. Sea, 152 Mo. 327, 53 S. W. 1074; Voerster v. Kunkel, 86 Mo. App. 197. Appellant complains that Mrs. Levy was an incompetent witness. The court committed no error in this regard for the reason Mrs. Levy was not a party to the contract. The contract was made by and between Mrs. Roberts and this respondent. The witness was merely present and testified to the contract. Even though respondent was a minor at the time, yet she could contract with Mrs. Roberts and having contracted with her can enforce same. Under the law the parents are entitled to the wages earned by their children yet this is a license or right which the parent may waive. That a parent has relinquished the right to a child's wages may be implied from the circumstances and direct evidence is not necessary. When the implied emancipation has been acted up-

on by third parties the parent is estopped to assert his customary right. Mrs. Levy having been present at the time the contract between the parties was made and not having objected thereto by that act waived her right to her daughter's wages and would be estopped from asserting a claim therefor against a third party who in good faith acted thereon. No formal act is required of the parent in the relinquishment of his claim to the earnings of a child. The same may be implied and inferred from the circumstances. These various propositions are sustained by the following authorities: Soldanels v. Railroad, 23 Mo. App. 516; Ziegler v. Fallon, 28 Mo. App. 297; Dierker v. Hess, 54 Mo. 246; Mott v. Purcell, 98 Mo. 247, 11 S. W. 564; Ream v. Watkins, 27 Mo. 516, 12 Mo. App. 566. There is abundant and ample proper evidence to justify the verdict on an implied contract leaving the evidence of Mrs. Levy entirely out of the case, treating it for the sake of argument as incompetent, and upon which the judgment should be affirmed. Clark v. Cordry, 69 Mo. App. 6.

STATEMENT.—This case started with the presentation in the probate court of Pike county of the following demand against the estate of Elizabeth Roberts, deceased:

State of Missouri, County of Pike, ss.

"In the probate court of Pike county, Mo., A.D. 1901. In the matter of the claim of Minnie McMorrow against the estate of Elizabeth Roberts, deceased, Frank Dowell, administrator.

"The estate of Elizabeth Roberts, deceased, in account with Minnie McMorrow.

"May 1, 1898, to services rendered Elizabeth Roberts in keeping house, washing and cooking for her and in waiting upon, attending to and caring for the said Elizabeth Roberts in sickness and doing her general housework, washing and cooking from January 1st, 1892 to May 1st, 1898, being 6 years and 4 months                                  $1,538.30

"June 1, 1900.  To dun horse about 6 years old    50.00
"June 1, 1900.  To 1 brood sow                    15.00
"June 1, 1900. To 1 hog weight 500 lbs.           20.00

                                                ————

                    "Total amount due        $1,668.30"

The statutory affidavit was attached.

There was a hearing on the demand in the probate court and later an appeal to the circuit court where the case was tried anew, the claimant getting judgment. The verdict allowed plaintiff $450 for personal services rendered to the deceased and $40 for the horse mentioned in the claim.  Nothing was allowed on account of the sow and hog, the finding of the jury as to those items being in favor of the estate.  An appeal was prosecuted from the judgment of the circuit court to this court.

The claimant is the child of Mary Levy, and there is testimony to prove her father died before the services sued for were rendered.  In 1883, while the deceased, Elizabeth Roberts, was living as a widow in Pike county, the mother of Minnie McMorrow went to live in the home of Mrs. Roberts, taking Minnie, who was then two years old, with her.  The terms on which the mother went there are not definitely disclosed by the testimony, but we understand that she worked for Mrs. Roberts as a servant.  The mother married about two years thereafter and she and the child left Mrs. Roberts' house.  Shortly afterwards, when claimant was four years old, she was returned to Mrs. Roberts.  The only evidence concerning the terms on which this was done was given by the mother, Mrs. Levy, who said: "She (Mrs. Roberts) came to me and told me she would take Minnie and do a good part by her."  From that time until claimant was seventeen years old she resided in the home of Mrs. Roberts, doing the ordinary work of a farmhouse and caring for the deceased during her last years when she was afflicted with a cancer.  Plaintiff was boarded and clothed by Mrs. Roberts and sent to school some.  The evidence is conflicting as to whether she was clothed as well as

other children of the neighborhood or sent to school as much. In the spring of 1898 a dispute arose between plaintiff and Mrs. Roberts as to the company plaintiff was keeping and in consequence of the dispute plaintiff left. Mrs. Roberts died in 1901. For three years thereafter plaintiff made no claim for compensation for services, though during that interval she asserted a right to certain personal property in the possession of Mrs. Roberts and employed an attorney to get it for her. Some of the property was turned over to the attorney by Mrs. Roberts, but the horse was left in her possession, although there is positive evidence that she admitted it belonged to the plaintiff. Mrs. Roberts afterwards sold the horse for $40.

GOODE, J. (after stating the facts.) —There was evidence which justified the jury in allowing the plaintiff's demand for the value of the horse. Though Mrs. Roberts sold it and kept the proceeds several witnesses swore to statements by her that the animal belonged to the plaintiff. It is insisted that the demand by plaintiff's attorney for her personal property and the delivery of certain property to him by the deceased, constituted a settlement of all controversies between the parties which bars plaintiff from recovering either for services or any property of hers retained by the deceased. This position is untenable. Nothing in the nature of a compromise of disputed claims occurred. When the attorney took away some articles of property he left the horse with Mrs. Roberts, not because she asserted it belonged to her, but because he could not conveniently take it at the time, or did not think it worth taking. As to the claim for services being covered by that transaction and included in the supposed settlement, we answer, that not only was there no compromise of any disputed demand, but that if there had been it would not have embraced plaintiff's claim for compensation for services, as that subject was not broached. Although plaintiff's silence about this

part of her demand when she was preferring her claim to property, tells against the merits of her cause of action, and was to be considered by the jury in arriving at a decision as to whether payment for services ought to be allowed, it shows there was no settlement of that item.

The instructions submitted plaintiff's claim to be compensated for her work on two possible grounds of recovery: first, a finding by the jury that an express contract for compensation had been made with Mrs.Roberts; second, the inference of a contract from circumstances in evidence going to show plaintiff served the deceased in the expectation of payment and the deceased accepted the work with the intention of paying for it. The defendant contends that the jury should have been instructed to return a verdict against the plaintiff on the ground that the evidence conclusively showed she rendered the services in question in return for board, clothing, schooling and being otherwise treated as the child of the deceased—that the family relation existed and plaintiff looked for no reward for her work except maintenance and education. The evidence as to the conditions on which the plaintiff entered Mrs. Roberts' home is inconclusive. As stated, the only positive testimony we have on the question is the mother's, which was that Mrs. Roberts said that if plaintiff would come and live with her she (Mrs. Roberts) would do a good part by plaintiff. Neither that testimony nor any circumstance in proof shows, beyond just inference to the contrary, that plaintiff was taken as a member of the family of the deceased. She may have been; but the words do not necessarily carry that meaning. And if they did, plaintiff might recover nevertheless on a subsequent promise to pay for her work. In considering plaintiff's right to recover on an implied agreement, the jury had to determine plaintiff's status in the household; and so the trial court held. Under the instructions, if the jury found she was a member of the family, it devolved on her to show an understanding or agreement that she was to be paid

for her work; but if the jury found she was not a member of the family, then she was entitled to recover the reasonable value of her services, unless the evidence showed she was to receive no compensation. Such is the effect of the instructions given on this point, which we think were sound. When a party sues to recover compensation for work done to promote the welfare of a family to which he belonged, the burden of proving that the work was to be paid for, rests on him. But if no family relationship existed, the party who accepted the work must prove it was done gratuitously or make compensation. [Fitzpatrick v. Dooley, 112 Mo. App. 165, 86 S. W. 719.]

We hold there was evidence on which the jury might infer that even if the family relationship existed, Mrs. Roberts intended to pay plaintiff and plaintiff expected payment for her services. Several disinterested witnesses testified to declarations by Mrs. Roberts of that intention. Some of these statements were coupled with the condition that payment would be made if Minnie remained in the household until of age; others were not. There was some testimony, too, from which the inference is proper that plaintiff knew of this intention on the part of the deceased and worked with it in mind. An agreement to compensate for services like those rendered by plaintiff may be deduced from relevant circumstances. [Fitzpatrick v. Dooley, supra; Cowell v. Roberts, Excr., 79 Mo. 218.]

The court below was generous to defendant in instructing regarding plaintiff's right, as against any claim by her father or mother, to recover her earnings. The instructions on this point were, in effect, that if the services in suit were rendered while plaintiff was a minor, to entitle her to recover for them she was bound to prove by the weight of evidence, that her father was dead, and that her mother, at the time the services were performed, had parted with the right to plaintiff's services or earnings. We might not be able to yield assent to the

first of those propositions if it had to be decided, but we think it does not. The plaintiff was an illegitimate child; and that the father of such a child is entitled to its services or earnings in preference to the mother, is doubtful. [Schouler, Dom. Rel. (5 Ed.), secs. 278, et seq.] The right of a parent to the work or earnings of a minor child is allowed in consideration of the support of the child by the parent. [Schouler, Dom. Rel., sec. 252.] Plaintiff's father had contributed nothing toward supporting her since she was an infant, if he did then. In fact, he left the State during her infancy, and since he left his whereabouts have been unknown. He could have had no claim to plaintiff's time which imposed on her the burden of showing he was dead.

The emancipation of a minor child and the relinquishment of its wages, may be shown by conduct—implied from circumstances. If a parent knows a child is working for stipulated wages, or in expectation of payment; knows, too, that the employer and the child understand payment is to be made to the child, and interposes no objection, these circumstances are evidence for the inference that the parent's right was waived. In the present case no conclusion is fairly possible except that if plaintiff was serving Mrs. Roberts for pay, plaintiff's mother had waived any right she might have to the fruits of the service. Mrs. Levy's own testimony is incompatible with the contrary conclusion, as are likewise the conceded facts that she took plaintiff when very young to live in Mrs. Roberts' home and allowed her to live there until grown without making any demand on Mrs. Roberts for remuneration. It was not essential to plaintiff's recovery that she should prove Mrs. Levy had parted with her right to plaintiff's earnings at the time, or before, the services were rendered. She could have waived them by her conduct while the services were in progress.

The serious exception in the case goes to the competency of the plaintiff's mother, Mrs. Levy, as a witness

concerning an express contract said to have been made between the deceased and plaintiff, that plaintiff should be paid; a question complicated by the lack of formal pleadings in the case to show precisely what contract is sued on. The only proof of an express contract to reward plaintiff—that is, one which was put into definite words showing a meeting of minds—was Mrs. Levy's testimony. We notice first the exception saved to the statement quoted above, that when Minnie was four years old Mrs. Roberts told her mother that she (Mrs. Roberts) would take Minnie and do a good part by her. The objection interposed to this testimony was that it showed an agreement between Mrs. Roberts, now deceased, and the mother to reward plaintiff for what she might do and therefore the mother was incompetent to prove the agreement. The court sustained the objection as to the incompetency of the witness to prove the contract, but admitted the testimony "as bearing on issues of the case outside the contract." The promise to take plaintiff and do a good part by her was too vague to constitute an agreement either express or implied on which plaintiff could recover. It was not a promise to pay wages or to give any specific reward; but might mean either good support as a member of the family, or a testamentary provision, or a gift when plaintiff married or reached full age, or to pay the reasonable value of plaintiff's services. The instructions were, in the main, excellent; but those allowing a recovery on an express promise were not definite as to what promise, indicated by the evidence, was intended, and might be argued to include this promise to plaintiff's mother; which, as said, was too vague to amount to an agreement on which an action will lie. The instruction should point out that under the evidence adduced, the only express contract on which a verdict can be given for plaintiff is one found to have been made directly between plaintiff and deceased. Such a contract as will be shown, is not one to which plaintiff's mother is necessarily a party or that necessarily disqualifies the mother to be

a witness. Doubtless it was on the issue of Mrs. Levy's relinquishment of her right to plaintiff's earnings that the court thought the evidence was relevant and competent; for it tended to prove Mrs. Levy has surrendered her right in favor of plaintiff. But if the agreement then made is the cause of action in suit, having been made with Mrs. Levy, she is incompetent as a witness to prove the agreement itself, or any fact in her own favor or in favor of the plaintiff claiming under her and pursuant to the contract made with her; unless the fact be one which occurred after the grant of letters on the estate of the deceased. [R. S. 1899, sec. 4652.] This interpretation appears to extend the force of the statute beyond the mischief against which it was directed, namely; allowing one party to an agreement the advantage of testifying regarding the transaction, when the other party is dead and can not give his version of the affair. If the living party is permitted to testify only to facts not connected with transactions between him and the deceased, the mischief sought to be prevented by the statute will not exist. Similar observations were made by the Supreme Court in its opinion in Kersey v. O'Day, 173 Mo.560, 570, 73 S. W. 481, wherein said court, nevertheless, adhered to the rule it criticised. The particular clause of the statute dealt with in that case, related to the competency of a party who was suing an administrator. But in the case of Curd v. Brown, 148 Mo. 82, 49 S. W. 990, the clause dealt with was the one disqualifying the surviving party to a contract; and in the latter case it was declared that the survivor was incompetent as a witness for any purpose. It is true that in Curd v. Brown, it was the plaintiff who was held incompetent; whereas in the present case Mrs. Levy is no party to the action. But this appears to be an immaterial circumstance under the present statute; which, as amended in 1887, provides that the survivor can testify neither in his own favor, or in favor of those claiming under him. [Davis v. Wood, 161 Mo. 17, 61 S. W. 695; Ashbury v. Hicklin, 181 Mo. 658,81

S. W. 390.] Testimony by Mrs. Levy going to show she had relinquished all interest in her child's earnings, would be against her interest; and if that circumstance determined the question of her competency, she was competent. But as we read the later cases, the facts controlling her competency would be that she was a party to the agreement in issue and on trial, and that her testimony was sought in favor of one claiming under her. The statute is plain as it reads, but judicial glosses have made it obscurer than any other on our books. An examination of the contradictory interpretations of the statute may be found in Ashbrook v. Fletcher, 41 Mo. App. 369, 378. It has been complicated by decisions that it does not affect the competency of a witness who would be competent at common law. [Angel v. Hester, 64 Mo. 142; Southern etc. Bank v. Slattery, 166 Mo. 620, 66 S. W. 1066.] This test of competency certainly will not suffice in all instances to realize the purpose of the enactment; as was pointed out by the Supreme Court in the case of Banking House v. Rood, 132 Mo. 256, 262, 33 S. W. 816. Other decisions are to the effect that a surviving party to an agreement is not disqualified as a witness, unless he is a party to the action on trial as well as to the contract. [Looker v. Davis, 147 Mo. 140; Meier v. Thiemann, 15 Mo. App. 307; Pritchett v. Reynolds, 21 Mo. App. 674.] The latter rule has been modified by holding that the living party to a contract cannot testify, if his testimony would result in his own favor as the person ultimately liable in the controversy, even if he is no party to the record. [Meier v. Thiemann, 90 Mo. 433, 2 S. W. 435; Messimer v. McCray, 113 Mo. 382, 21 S. W. 17.] And as the statute reads since the amendment of 1887, it would appear that even when the surviving party to the agreement is not a party to the suit, he cannot testify in his own favor or in favor of one claiming under him. And this we understand to be the rule of decision adopted by the recent cases; for though the opinions do not say so in direct words, the statute is applied

in accordance with that rule. [Davis v. Wood, Ashbury v. Hicklin, supra.] The Legislature removed the common law disability of witnesses because of interest, and thus far the statute is an enabling one. But it is a disabling statute too; and we think that in providing for the disability of the survivor of two parties to an agreement, the Legislature was not greatly concerned about whether or not he would have been competent to testify at common law.

If the above views are sound, the essential inquiry in ascertaining Mrs. Levy's competency is whether she was a party to the contract in issue and on trial or not. We have said that plaintiff sought relief on two theories, both of which were submitted to the jury, to-wit; an express agreement by the deceased to pay her and an agreement to be implied from circumstances tending to show that, though no express agreement was made, plaintiff worked with the expectation of being paid and the deceased intended to pay her. Now Mrs. Levy could not have been, in any real sense, a party to an implied agreement by the deceased to reward the plaintiff. It was necessary, of course, for the jury to find Mrs. Levy had waived her right to plaintiff's earnings; and we have held that the evidence showed conclusively she did waive it. Every waiver of a legal right which the law will enforce, does not amount to a contract, for some of the elements essential to a contract may be lacking; for instance, a consideration. But in the case at bar the waiver, whether regarded as constituting a contract, or simply consent to the payment of plaintiff's earnings to herself, cannot, except by the most forced and unnatural construction, be made a part of the implied contract between plaintiff and the deceased. Hence, we hold that Mrs. Levy was no such party to an implied agreement as would disable her to testify. But the particular bit of testimony with which we are dealing had some tendency to prove an express agreement between the deceased and Mrs. Levy for compensation to plaintiff. The deceased

said to Mrs. Levy that she would do a good part by the plaintiff. Now as that promise was allowed to enter into the evidence tending to show an express contract, the jury might have found a verdict for the plaintiff because they believed this very conversation between Mrs. Levy and Mrs. Roberts showed an express contract. But in that contingency Mrs. Levy was incompetent as a witness, and hence the contract could not be established. Therefore it follows that the effect of the testimony on the jury should have been controlled by an instruction that they were not to consider it as evidence of an *agreement* to pay plaintiff, but only on the issue of Mrs. Levy's waiver of claim to plaintiff's earnings. As to the latter issue it is so clear from Mrs. Levy's conduct as told by herself, that the waiver may be assumed as a legal conclusion. Hence the testimony may as well be excluded altogether on a second trial. Perhaps it has some tendency to prove a family relationship existed between plaintiff and the deceased; but that fact would be in defendant's favor and if he objects to the testimony, of course it need not be admitted as favorable to him.

Mrs. Levy also testified as follows over the objection of the defendant:

"Q. Did you ever hear the matter (that is regarding compensation for plaintiff's work) referred to again? A. Yes, sir.

"Q. On what occasion? A. I was down there once and there was going to be threshing and she wanted some of her nieces to come help her cook for the threshing.

"Q. Who did? A. Mrs. Roberts, and they wouldn't do it and I stayed myself and helped her, and she says, 'Minnie, you stay,' She says, 'You stay and help me out and I will pay you well for it.'

"Q. What nieces was it that she had requested to come and help her? A. It was John Dowell's daughter and one of Frank Dowell's daughters.

"Q. What was going on? A. A picnic at Elk Lick Spring.

"Q. What did Minnie do? A. She stayed there and done the work.

"Q. And the other girls went to the picnic? A. yes, sir."

Obviously that testimony had no tendency to prove a contract to pay plaintiff for her services generally; that is, to establish the demand in suit. It related to a particular incident and was an agreement to compensate plaintiff for particular work done on an occasion when country households have much extra labor in entertaining the men who work with threshing machines. The testimony was irrelevant to the issue on trial and if objected to on that ground should have been excluded. But the only objection offered was that Mrs. Levy was an incompetent witness. The facts related showed no contract between the witness and Mrs. Roberts which would render the former incompetent.

Mrs. Levy gave other testimony conducing to show an express contract between Mrs. Roberts and the plaintiff in person to compensate her for her work. We will quote that testimony, as an exception to its admission was saved:

"Q. Well, Mrs. Levy, you took the child to Mrs. Roberts and left her with Mrs. Roberts when she was four years old? A. Yes, sir.

"Q. When was the next time this matter came up, about Minnie's staying there and the terms under which she was to stay there? A. When Minnie was between ten and eleven years old.

"Q. Where was the conversation, where did it take place? A. At her house.

"Q. Where had Minnie stayed from the time she was four years old until this other conversation came up. At Mrs. Roberts.'

"Q. Tell the jury what was said on that occasion?

Proceed and relate what took place? A. I was talking to Minnie and Minnie was telling me—

"Q. Was Mrs. Roberts present? A. Yes, sir.

"Q. You were talking to Minnie? A. Yes, sir, and me and Mrs. Roberts was talking and she says, 'Minnie, stay with me till you are grown,' and she says, 'I will pay you well for it,' and Minnie says, 'Aunt Bet, I will do it.'

"Q. That was when Minnie was how old? A. Between ten and eleven.

The substance of the above testimony was repeated several times. Plainly it tended to show a positive agreement between plaintiff and the deceased for compensation for plaintiff's work; and, if Mrs. Levy was a competent witness, required the court to submit to the jury the question of whether such an agreement was made. It is contended that the testimony was incompetent, because the promise of the deceased occurred in the course of a conversation between Mrs. Roberts and Mrs. Levy, in which the former was agreeing with the latter regarding plaintiff's services. But Mrs. Levy said the conversation between her and Mrs. Roberts was about Minnie's age and the stock on the farm. It seems to have been a miscellaneous talk on different topics. "I was talking to Minnie and me and Mrs. Roberts was talking," said the witness. The remarks interchanged between Mrs. Roberts and plaintiff, then a child, are rather meagre to establish a contract; but it is apparent at a glance that what Mrs. Roberts said to the plaintiff and the plaintiff replied, go toward establishing an express agreement to pay for plaintiff's work. There is then no question about the relevancy of the evidence. It was positively sworn to by the witness; therefore was substantial and for the jury's consideration, provided Mrs. Levy was a competent witness. For aught that appears she was. She is not interested financially or from a legal point of view in the result of this action.

Doubtless she is interested in her daughter's success; but that bears on the weight of her testimony, not her competency. She was no party to the agreement testified to have been made between Mrs. Roberts and her daughter on the occasion mentioned, but merely an auditor of what they said. The statute does not disqualify her. If the agreement had been made with her instead of her daughter, she would have been disqualified. In support of their position defendant's counsel point to the case of Asbury v. Hicklin, 181 Mo. 658, 81 S. W. 390, in which a mother was held to be an incompetent witness in an action instituted by her daughter against the estate of a deceased person, on an agreement by the deceased to provide for the daughter by will. But in that case the contract in suit was between the deceased and the mother. The child was only four years old when it was made. The mother testified that the deceased agreed with her that if the child was left with the deceased she would raise her as her own and do a child's part by her. The mother in that case was incompetent by the very words of the statute. But the evidence we are dealing with tended to prove an agreement made by Mrs. Roberts directly with the plaintiff when the latter was ten or eleven years old, and old enough for a promise made to her to be binding on the promisor. Mrs. Levy was not shown to have participated in the agreement; and whatever we may think of the cogency of the proof to show a contract between the plaintiff and the deceased, we must hold it was evidence for the jury to weigh, subject to the revisory power of the trial court in granting new trials. It is argued that Mrs. Levy was necessarily a party to the contract because, unless she waived her right to the child's earnings, Mrs. Roberts could make no valid contract with the latter. This argument strives to make Mrs. Levy a party by construction. There would be more force in it if the law required the relinquishment by a parent of the wages of a minor to be made by a formal contract, but it does not. The law now is that a relinquishment

may be inferred from circumstances like permitting the child to leave the parent and shift for himself. [Ream v. Watkins, 27 Mo. 516; Dierker v. Hess, 54 Mo. 246.] In the Ream case, a suit by a minor for wages, instructions that Ream could not recover unless the jury found he was entitled to contract on his own account and that his father had given consent that he might work for himself, were held to be erroneous, because they lacked the qualification that the jury might infer the manumission from circumstances in proof. When the agreement between Mrs. Roberts and plaintiff was made, nothing was said about Mrs. Levy's right to the earnings; nor does it appear that any thing was ever said on that subject in such a way as to become a contract between the deceased and the mother. As said before, in order to award compensation to the plaintiff the jury must have found that at some time the mother waived her right. But we hold that such waiver did not, necessarily, attach to and become incorporated with a contract made on another occasion between Mrs. Roberts and the plaintiff and thereby disqualify Mrs. Levy to testify to said contract on the ground that she was a party to it. A witness is disqualified if he was a party to the contract or cause of action in suit and the other party is dead. The only express contract in this case on which a recovery is permissible, is the one between the deceased and the plaintiff. Mrs Levy's waiver of right to her daughter's earnings, although involved in the case, was a collateral issue, but no part of the contract sued on and did not disqualify her to testify.

The judgment is reversed and the cause remanded. All concur.