BELLE WHARTON, RESPONDENT, v. EARL DENBY, EXECUTOR, ETC., APPELLANT.[*]

Kansas City Court of Appeals.   June 6, 1927.

\*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, section 1470, p. 1336, n. 7; Executors and Administrators, 24CJ, section 1120, p. 401, n. 34; section 1123, p. 407, n. 88, 94; section 2192, p. 874, n. 21; section 2267, p. 910, n. 95; Trial, 38Cyc, p. 1516, n. 55; Work and Labor, 40Cyc, p. 2846, n. 89.

*S. J.* and *G. C. Jones* and *Lavelock, Kirkpatrick, Clark & Garner* for respondent.

*John T. Morris* and *Lawson & Hale* for appellant.

FRANK, C.—This case arose in the probate court of Ray county, where respondent filed a claim against the estate of Minerva Belle Wharton, deceased for services rendered said deceased during her lifetime. The claim filed by respondent, omitting caption and verification is as follows:

"To services rendered Minerva Belle Wharton, at the special instance and request of said Minerva Wharton, in cooking her meals and carrying them to her, sweeping her house, milking her cow and doing her housework, for a period of twenty years, commencing October 17, 1924, at $5 per month ................................ $1200.00

"To nursing, waiting on, sitting up at nights with and attending said Minerva Belle Wharton, and giving her medicine, for the same period above stated, during which time said Minerva Belle Wharton was constantly in ill health, and required attention and care, at $12.50 per month ........................................ $3000.00

"Total ...................................... $4200.00"

Respondent's claim is for services rendered to deceased during her lifetime from October 1, 1904, until October 17, 1924.

Decedent lived with her mother in the town of Lawson, Missouri, until the date of her mother's death in 1913. Thereafter she continued to live in the same house until her death in 1924.

Respondent's husband, who died in 1904, was a brother of decedent. Respondent and decedent were not otherwise related. No family relation existed between them. They lived in separate households. During the entire time in question respondent with her two children lived across the street and two doors east of decedent's home.

The decedent was sick a great portion of the time during the twenty years preceding her death. She sent for respondent on an average of three or four times a week during a period of twenty years. These calls usually came after midnight. Respondent always responded to these calls and many times stayed all night with her.

Mrs. Joe Titus a sister of respondent testified as follows:

"I don't know how often she had to stay all night over there, because I never kept count. I know of my own knowledge that she did stay all night over there because she would bring her daughter Katie to my house and leave her while she had to go. I have gone with her and have stayed all night over there myself.

"During that time I visited deceased once in a while. She was sick most of the time, or said she was at least.

"I have seen plaintiff give deceased medicine and sit up all night with her. She did that so often that I never kept count. I have seen her cooking and carrying meals over to deceased three times a day. She lived two doors east and across the street from deceased. I have known her to do that a week at a time, but it wasn't so often that she would cook and carry her meals to her that way. Plaintiff would fix deceased's bed for her and sweep the house and straighten up everything. I couldn't tell how often I have seen that done during the years since 1904.

"I moved there in 1904. Those services were rendered so often that I never kept count.

"Q. And how much of the time did they continue during that twenty years? A. Well, she just called on her all the time."

Mrs. George Madden lived across the street from decedent's home from 1903 until 1911. She testified that during the time she lived there she saw respondent at decedent's home drawing water, carrying in coal and sweeping out the house as often as three times a week; that she had seen respondent leaving decedent's home in the morning before eight o'clock; that this occurred about three times each week.

Dr. John H. Romey a practicing physician testified in substance as follows:

"During the time that she lived in town from 1903 to her death, I attended her professionally. Some years I was called more frequently than others. I looked up ten months of 1924 prior to her death, and I think I was there seven or eight times in that year; in that ten months. That was the last months before her death. I haven't been there so many times in the last six or seven years as I was there before that time.

"From 1913 to 1916, inclusive, was one of the times that I was there oftener, as I remember it, than any other time. I treated her before they moved into town, and treated her more or less from the time she moved into town until her death. I don't suppose I treated her all of the time, and might have been some other physicians. I was called every year from the time she moved into town until the time she died. When I went to see her when she was seriously sick Mrs. Wharton, the plaintiff, was always there. When I visited her she had pain. She had different troubles, stomach trouble, and kidney trouble.

"Q. Was her condition at any time serious or not? A. Yes. I saw Mrs. Wharton, the plaintiff, take care of Minerva Belle Wharton when I was there. When Minerva Belle Wharton was seriously sick she wanted company, and she was usually easier when Mrs. Wharton came."

Dr. Edwin Shouse another physician testified that he attended decedent from 1909 until 1912 and again from 1918 up to and including 1920; that seventy-five per cent of the times he called to see decedent he saw respondent there administering to her needs; that he was not decedent's attending physician and did not attend her after 1920.

Mrs. Roy Morrow a daughter of respondent testified as follows:

"I am a daughter of plaintiff and the wife of witness Roy Morrow. Until I was married seven years ago I lived with my mother in Lawson, and since that time I have continued to live at Lawson, Missouri, which is a small town of seven hundred or eight hundred or nine hundred people.

"When I lived with my mother I lived across the street and two or three doors away from Miss Belle Wharton, whom I knew all of my life. I remember as far back as 1904. From that time on up to her death in 1924, Miss Belle Wharton was very nervous, sick all of the time. I have seen my mother, the plaintiff, cook Miss Belle Wharton's meals and carry them to her for a week at a time, besides cooking the meals at Miss Belle's own house. I know of my own knowledge that those services began ever since she came to town in 1903. Unless Miss Belle was sick in bed my mother would not carry her meals to her. I think she cooked and carried her meals to her about three times for a week or ten days. That was just before she went to the hospital in 1921. At other times my mother cooked Miss Belle's meals in her own home. I could not say how often she would do that during the twenty years. My mother did all kinds of housework at Miss Belle's home, such as carrying in coal, ironing, sweeping and dusting, and everything. She did that about three or four times a week, all the time for the whole twenty years. I have seen my mother sit by the bed and hold Miss Belle's pulse, and she was to wake her every fifteen minutes, either to take her medicine or for fear her

pulse would go down. Sometimes she would do that every night for a week or so, and then sometimes it was just two or three times a week: Those services continued every night, off and on for twenty years. They were rendered both day and night, most frequently at night. Miss Belle did not rest well at night. She did not rest at all unless medicine . . . ."

Other witnesses testified that respondent gave decedent medicine, milked her cow, carried coal and swept her house three or four times a week during a period of twenty years.

Respondent introduced evidence to the effect that the reasonable value of the nursing and care of decedent by respondent was $25 or $30 per month and the reasonable value of the other services rendered by respondent was from $9 to $12 per month.

Appellant in his statement calls attention to the fact that certain evidence was admitted over the objection and exception of appellant but no error is assigned thereon in this court. The point is not here for review. [Sinclair v. Telephone Co., 195 S. W. 558.]

The first contention presented here is that the court erred in giving instruction No. 1 which reads as follows:

"If you find and believe from the evidence that the plaintiff, between October 1, 1904, and October 17, 1924, at the request of Minerva Belle Wharton and carried them to her, swept her house, milked her cow and did her housework, and nursed the said Minerva Belle Wharton, sat up nights with and attended her, and gave her medicine; and that it was the intention of plaintiff to charge for such services and of said Minerva Wharton to pay therefor, then you will find for plaintiff for such sum as you may find such services, if you find such services were performed, to have been reasonably worth.

"If you find for plaintiff you cannot find to exceed the sum of $5 per month for cooking meals and carrying them to said Minerva Belle Wharton, sweeping her house, milking her cow, in doing her housework, nor can you find for plaintiff to exceed the sum of $12.50 per month for nursing the said Minerva Belle Wharton, sitting up nights with and attending her and giving her medicine. These amounts are not to be considered by you as an indication of the amount you should find such services to be worth, if you find such services were performed, but if you find for plaintiff it should be for such sum as you find such services to have been worth, not exceeding these amounts.

"You are further instructed that the law presumes in cases of this kind, unless you find to the contrary from the evidence in the case, that it was the intention of plaintiff to charge for such services and of the said Minerva Belle Wharton to pay therefor."

The first complaint made against this instruction is that it required the jury to find that decedent requested respondent to cook meals, milk her cow, sweep her house and do her housework, when there was

no evidence that decedent requested respondent to perform any of said services.

We are not impressed with this contention. The evidence shows that decedent sent for respondent on an average of three times per week during a period of twenty years; that respondent always responded to these calls and performed the services in question. It cannot be presumed that decedent had no purpose in sending for respondent. That fact that she called her approximately three times per week during a period of twenty years and the further fact that respondent performed services for her on an everage of three times per week, is some evidence that the services were performed at the request of decedent.

Further testimony on this point from a witness who lived within one block of decedent's home is as follows:

"I moved there in 1904. These services were rendered so often that I never kept count.

"Q. And how much of the time did they continue during that twenty years? A. Well, *she just called on her all the time.*

The reasonable inference to be drawn from this evidence is that the services in question were performed at the request of decedent.

It is next contended that the last paragraph of instruction No. 1 given at the request of plaintiff is erroneous in that it attempts to put the burden on defendant to show that plaintiff did not intend to charge for her services and therefore conflicts with instruction No. 3 given at the request of plaintiff which put the burden on plaintiff to make out her case by a preponderance of the evidence. That part of the instruction complained of is as follows:

"You are further instructed that the law presumes in cases of this kind, unless you find to the contrary from the evidence in the case, that it was the intention of plaintiff to charge for such services and of the said Minerva Belle Wharton to pay therefor."

This contention raises the point as to where the burden of proof falls in this case. The situation of the parties and their relation to each other at the time the service was rendered determines this question. The rules applicable to cases involving claims against estates of deceased persons are correctly stated in Shern v. Sims, 258 S. W. 1029, 1030, as follows:

1. "The rule is that, where the family relation does not exist, the burden is upon the party who accepts services of the character shown in this case to prove that the same were rendered gratuitously; otherwise, a contract for compensation will be implied. [McMorrow v. Dowell, 116 Mo. App. 289, 90 S. W. 728; Fitzpatrick v. Dooley, 112 Mo. App. 165, 86 S. W. 719.]

2. "Where the family relation exists, the presumption is that the services are rendered gratuitously, and the burden is upon the claimant to show to the contrary. [McMorrow v. Dowell, supra; Fitz-

patrick v. Dooley, supra; Clow v. Wormington (Mo. App.), 206 S. W. 415; Baker v. Lyell, 210 Mo. App. 230, 242 S. W. 703; Smith v. Davis Estate, 206 Mo. App. 446, 230 S. W. 670; Kleinberg v. Kinealy (Mo. App.), 193 S. W. 981.]

3. "However, this principle is not confined in its application to where the family relation exists, but is applicable to a case 'where the relations of the parties are sufficient, according to the experience and customs of men, to invoke its influence as a result of reason and natural justice.' [Hyde v. Honiter, 175 Mo. App. 583, 598, 158 S. W. 83, 88; Wagner v. Illuminating Co., 141 Mo. App. 51, 55, 121 S. W. 329.] Where the relation of the parties is such, either by consanguinity or otherwise, as to show that the services were performed under circumstances that naturally give rise to the inference that no charge is expected to be made, the burden is upon the claimant to show that he intended to charge for them at the time they were rendered, and that the person to whom they were rendered 'either intended . . . to pay for them . . . or that the services were of such a character and were performed under such circumstances as to raise the presumption that the parties intended that they were to be paid for, or at least that the circumstances were such, a reasonable man in the same situation of the person who receives and is benefited by the services, ought to understand and know that compensation would be expected from them.' [Hyde v. Honiter, supra, l. c. 598, 599, 158 S. W. 88; Kleinberg v. Kinealy, supra, l. c. 984; Dobbin v. Dobbin, 204 S. W 918. See, also, Wagner v. Electric Co., 177 Mo. 44, 74 S. W. 966.] However, the agreement to pay may be inferred from the circumstances, which need not be shown by direct proof. [McMorrow v. Dowell, supra; Cole v. Fitzgerald, 132 Mo. App. 17, 111 S. W. 628.]"

In Sprague v. Sea, 152 Mo. 327, 332, the law is stated thus: ". . . and in actions like this on the common count of *quantum meruit* for work and labor done and performed at the instance and request of decedent's intestate, proof that the services were performed and he accepted the work, makes out a prima-facie case."

In Fitzpatrick v. Dooley, 112 Mo. App. 165, 171, 172, the court said, "Regarded from a practical standpoint, the important inquiry relates to where the burden of proof falls in these cases. If the relation of the parties is such that a presumption to pay arises from the mere acceptance of beneficial work, the defendant has the burden of overcoming the presumption by proof that the work was done gratuitously."

The undisputed evidence in this case is that no family relation existed between the parties. Appellant states in brief that no such relation existed. Instruction No. 1 given at the request of plaintiff does not submit the question of family relation to jury. It would have

been error so to do in the face of the undisputed evidence that no such relation existed. [Hyde v. Honiter, 175 Mo. App. 583, 600.]

There being no family relation existing between the parties, the burden was upon appellant to prove that the services were rendered gratuitously unless the evidence showed that the situation of the parties and their relation to each other were such as to show that the services were performed under such circumstances that naturally give rise to the inference that no charge was expected to be made. [Shern v. Sims, supra.]

The evidence touching this point shows that respondent was a sister-in-law of decedent. She had a family of her own, maintained and lived in her own home and never was part of decedent's household. No close relationship, feeling or affection was shown to exist between the parties except the fact that respondent was willing to and did render beneficial service to decedent every time she was requested so to do.

The fact that respondent was a sister-in-law of decedent is not sufficient, in and of itself, to raise a presumption that the services were rendered gratuitously. [Sprague v. Sea, 152 Mo. 327, 332.]

Respondent was under no obligation, either legal or moral, to render any service whatever to deceased. We do not think the evidence shows any peculiar relationship between the parties sufficient to justify an inference that respondent performed the services in question gratuitously.

Absent a family relation and absent any peculiar or close relation, or feeling, existing between the parties sufficient to raise the presumption that the services were performed without any expectation to charge therefor, the law presumes that it was the intention of respondent to charge for such services and of decedent to pay therefor, unless the evidence shows a contrary intention. The court therefore did not err in so instructing the jury in the last paragraph of instruction No. 1 given at the request of respondent.

The next and last contention of appellant is that the judgment is erroneous in that it awards execution against defendant, executor.

That part of the judgment awarding execution to the plaintiff is erroneous. The judgment should have been ordered certified to the probate court of Ray county for classification against the estate as provided by law. However, this error does not call for a reversal of the case. The proper judgment may be entered here. [Wood v. Flanery, 89 Mo. App. 632, 643; Hyde v. Honiter, 175 Mo. App. 583, 600; Lippard v. Jefferies, 181 Mo. App. 106, 135.]

The judgment is therefore set aside and the following judgment entered here to-wit, it is therefore adjudged and decreed by the court that plaintiff have and recover of and from the defendant as executor of the estate of Minerva Belle Wharton, deceased, the sum of $2400 with six per cent interest from April 28, 1926, together with her costs herein expended,

We find no reversible error in the record and therefore affirm the judgment as corrected and entered here, and remand the cause with directions to the trial court to certify the judgment to the probate court of Ray county, Missouri. *Williams, C.,* concurs.

PER CURIAM:—The foregoing opinion by FRANK, C., is hereby adopted as the opinion of the court. *Bland* and *Arnold, JJ.,* concur; *Trimble, P. J.,* absent.