F. C. BROSIUS, Appellant, v. J. H. BARKER, Respondent.

Springfield Court of Appeals, April 3, 1911.

1. PARENT AND CHILD: Infants: Father's Liability for Son's Necessaries: Emancipation. A father is held not responsible for the hospital and physician's charges for taking care of a minor son, who at the age of nineteen began working for his father for wages and paid his own board, and later left his home in Missouri and went to Oregon, where he worked and retained his wages. While so working he was taken ill with a fever on account of which the above charges for medical attention were made.

2. ———: ———: Father's Duty to Support Minor Child. The general rule is that the father is under a legal obligation to maintain and support his infant child.

3. EMANCIPATION: Parent and Child: Infants. Complete emancipation is an entire surrender of all the rights to the care, custody and earnings of the child, as well as a renunciation of parental duties, and the test to be applied is that of the preservation or destruction of the parental and filial relations.

4. ———: Express and Implied: Parent and Child: Infants. Express emancipation takes place when the parent agrees with his child, who is old enough to take care of and provide for himself, that he may go away from home and earn his own living and do as he pleases with the fruits of his labor. Implied emancipation is where the parent without any express agreement, by his acts or conduct impliedly consents that his infant child shall leave home and shift for himself.

154 App.—42

Brosius v. Barker.

5. ————: No Formality Required: Parent and Child. In the absence of statute the rule now is that emancipation need not be evidenced by any formally executed instrument, or by any recorded act; but it is a question of fact which may be proven from circumstances, and direct proof is not required.

6. ————: Must Be Proven: Parent and Child. Emancipation is never presumed, and if relied on as a defense, must be proven.

7. PARENT AND CHILD: Emancipation: Liability of Parent. Where a child, who is physically and mentally able to take care of himself, has voluntarily abandoned parental rule and has gone out to fight the battle of life on his own account, the parent is under no legal obligation to support him.

8. ————: ————: ————: Duty of Person Dealing With Infant. Every person who deals with an infant is bound at his peril to inquire and ascertain the real circumstances of the infant, and so where one furnishes an emancipated infant with necessaries, the fact that he had no knowledge at the time that the infant was not under parental control, will not avoid the defense of emancipation in an action against the parent on account of the necessaries furnished to the infant.

9. ————: ————: Necessaries Furnished: Promise to Pay. In a suit against a father for medical services furnished his minor son, the father pleaded that the son had been emancipated. The plaintiff claimed that even though the father had emancipated the son, yet he had promised in a letter to pay for the medical attention. This letter, is examined and held not sufficient to show an agreement on the part of the father to pay for the services rendered.       :

Appeal from Wright Circuit Court.—*Hon. C. H. Skinker*, Judge.

AFFIRMED.

*A. H. Buchanan* for appellant.

(1) Contracts of infants for necessaries are neither void nor voidable and the parent is liable for such, unless he can avoid responsibility on some such ground as emancipation which has been attempted in this case. But which we think cannot be maintained under the evidence. Industrial Home v. Fritchey, 10 Mo. App.

344; Paul v. Smith, 41 Mo. App. 275; Rankin v. Rankin, 83 Mo. App. 341; Academy v. Bobb, 52 Mo. 357. (2) If emancipation is relied upon by defendant, he must allege it and prove it. The first hint of emancipation in this case came at the last moment and after repeated general denials had been filed by defendant. And we submit that taking into consideration the letter of September 22, written by defendant that emancipation was not proven, but the contrary. Emancipation must be both alleged and proved. Singer v. Railroad, 119 Mo. App. 112. (3) The fact that a child is living away from home does not relieve the parent of liability to support it. 29 Cyc. 1609. (4) And where a parent has knowledge that necessaries are being furnished his minor child, by a stranger, it is his duty to pay for them and if he stands by and encourages such stranger to so furnish his child, as was done in this case, he is legally and morally bound to pay. 29 Cyc. 1610, 1611. (5) Even in law cases where the judgment was clearly for the wrong party, the appellate court will reverse the case with directions to the trial court to see that judgment is rendered for the right party. And we submit that in this case the trial court should have directed a verdict for plaintiff. Purdy v. Wilson, 130 Mo. App. 150; Cornet v. Boyle, 116 Mo. App. 430; Wares v. Wares, 122 Mo. App. 129; McCann v. McCann, 81 Mo. App. 1; Decker v. School District, 101 Mo. App. 115.

*Fred Stewart* and *J. M. Adams* for respondent.

GRAY, J.—The defendant is the father of Norman Barker, who was of the age of twenty years in 1907. Sometime in June of the year just mentioned, Norman left his father's home in Douglas county, this state, and went to the State of Oregon. On September 4, 1907, he was sick with typhoid fever and entered a hospital and was there cared for and treated for said

disease until October 19th, of that year. The plaintiff at said time, was a duly licensed and practicing physician in said state, and treated the defendant's son during said sickness, and claimed that the reasonable value of the services so rendered was $145. There were also hospital fees of the alleged value of $90 incurred by Norman during his sickness. The hospital was controlled by a corporation and its account was assigned by it to the plaintiff. There was paid on the hospital bill, the sum of $50.

Plaintiff's petition is in two counts. The first for his own services, and the second for the balance due on the assigned account. The answer, in addition to a general denial, alleged: "That long before the times mentioned in plaintiff's petition, this defendant, as such father of said Norman Barker, emancipated said Norman Barker, and discharged him from any liability to said defendant for services and gave to said Norman Barker the full right to control his own property, earning and wages and to do such things as he might choose, the same as though he were of full age."

The plaintiff offered testimony tending to prove his account. He testified that when the young man came to see him he had typhoid fever, and claimed to be without money, and that he sent him to the hospital and assumed the charges due the institution for the care of the patient.

The defendant testified that his wife died in 1904, and that the boy remained with him under the relation of parent and child until sometime in 1906, when he became dissatisfied, and an arrangement was made by which the boy worked for him from that time until June, 1907, for one dollar a day, and the son paid him for boarding him; that the boy left home on the 10th of June, 1907, and went west, and that he did not receive any of his wages while he was away, and considered the young man had started out for himself.

Norman testified that he had been working for him-

self for about four years; that before he went west he worked for his father for one dollar a day, and paid his father for his board; that when he went west he worked in a wood camp cutting wood for $1.25 a cord, and that he did not send any of his wages to his father; that when he went to the hospital, he went to see the plaintiff, who was intending to send him to the county hospital, and after they had talked awhile, he asked plaintiff what would be the charges at the local hospital, and was told not to exceed $25 a week, including the doctor's bill; that in conversation with the plaintiff he told him he thought he could get the money from his father to pay the bill; that he wrote to his father and he sent him some money, and he paid the same on his bills at the hospital.

The plaintiff requested the court to instruct the jury that the services sued for were necessaries, and the defendant was liable therefor to a reasonable amount, and that it would make no difference if the jury found the defendant had emancipated his son. The court refused the instructions, whereupon the plaintiff asked the court to instruct the jury that before the jury should find a verdict for the defendant on the theory that he had emancipated his son, they must find that plaintiff had knowledge of such emancipation at the time the services were rendered. The court refused to so instruct, whereupon the plaintiff asked the court to instruct the jury that if they found from the evidence that the defendant during the time plaintiff was treating his son, promised to furnish any money to his son to pay for said services, then he had waived his right to defend on the ground that he had emancipated his son. The court refused all of said instructions and submitted the case to the jury on the theory that the defendant was liable, unless the jury found that the son had been emancipated.

The general rule is that the father is under a legal obligation to maintain and support his infant child.

The child comes into the world absolutely helpless and incapable of protecting itself. No creature is more helpless at birth than the human being, yet in some jurisdictions the courts hold that parents who have bestowed life, and have brought into the world these helpless creatures, are under no legal obligation to support or preserve them during the dependent period of their existence. [Kelley v. Davis, 49 N. H. 187; Gordan v. Potter, 17 Vt. 348.] But the great weight of modern authority repudiates this doctrine and declares it to be opposed to natural sense of justice. [Huke v. Huke, 44 Mo. App. 308; Porter v. Powell, 79 Ia. 152, 44 N. W. 295; 18 Am. St. Rep. 353, 7 L. R. A. 176; Guthrie v. Conrad, 110 N. W. 454; Rounds Bros. v. McDaniel, 118 S. W. 956; Ream v. Watkins, 27 Mo. 516; Philpott v. Railroad, 85 Mo. 164; Mott v. Purcell, 98 Mo. 247, 11 S. W. 564; 29 Cyc. 1675; Johnson v. Gibson, 4 E. D. Smith (N. Y.) 231; Ramey v. Ramey, 23 N. E. 69, 6 L. R. A. 682; Kubic v. Zenke, 74 N. W. 748; Gott v. Clark, 78 Ill. 229.]

Complete emancipation is an entire surrender of all the rights to the care, custody and earnings of the child, as well as a renunciation of parental duties. [Lowell v. Newport, 66 Me. 78.] And the test to be applied is that of the preservation or destruction of the parental and filial relations. [Sanford v. Lebanon, 31 Me. 124.]

There are two kinds of emancipation—express and implied. Express emancipation takes place when the parent agrees with his child, who is old enough to take care of and provide for himself, that he may go away from home and earn his own living and do as he pleases with the fruits of his labor. Implied emancipation is where the parent, without any express agreement by his acts or conduct, impliedly consents that his infant child may leave home and shift for himself. [Rounds Bros. v. McDaniel, supra; Lowell v. Newport, supra.]

Emancipation was in early time, evidenced and

perfected by the formality of an imaginary sale. Subsequently this was abolished, and the simple process of manumission before a magistrate substituted. [Everett v. Sherfrey, 1 Ia. 358.] In Louisiana the matter is expressly regulated by statute. But in the absence of statute, the rule now is that emancipation need not be evidenced by any formally executed instrument, or by any record act, but is a question of fact which may be proven from circumstances and direct proof is not required. [Canover v. Cooper, 3 Barb. 115; Benson v. Remington, 2 Mass. 115; Everett v. Sherfrey, supra.]

The question of emancipation must be determined upon the peculiar facts and circumstances of each case, and nothing more than general rules can be declared which will be applicable in all cases. [Inhabitants of Carthage v. Inhabitants of Canton, 54 Atl. 1104.]

Emancipation is never presumed, and if relied upon as a defense, must be proven. [Singer v. Railroad, 119 Mo. App. 112, 95 S. W. 944.]

Without further declaring general rules, we hold that where the child who is physically and mentally able to take care of himself, has voluntarily abandoned the parental roof and turned his back to its protection and influence, and has gone out to fight the battle of life on his own account, the parent is under no obligation to support him. [29 Cyc. 1610; Owen v. White, 5 Port. (Ala.) 435, 30 Am. Dec. 572; Hunt v. Thompson, 5 Ill. 179, 36 Am. Dec. 538; Angel v. M'Lellan, 16 Mass. 28; Weeks v. Merrow, 40 Me. 151; Rounds Bros. v. McDaniel, supra; Johnson v. Gibson, supra.]

The plaintiff claims he had no knowledge of the fact that the son was no longer under parental control, and for that reason the emancipation defense cannot be made against his claim. We have been unable to find any authorities supporting appellant's contention. In Tyler on Infancy and Coverture, page 101, it is said: "Every person, therefore, who deals with an infant, is bound, at his peril, to inquire and ascertain the real

circumstances of the infant." And the author cites in support thereof. [Kline v. L'Amoreaux, 2 Paige's R. 419; Perrin v. Wilson, 10 Miss. R. 451; Story v. Perry, 19 Eng. C. L. R. 508.]

The liability of the father on contracts made by the infant is to be determined by the rule relating to master and servant, and principal and agent. The father is only held liable on the theory that the infant was authorized, either expressly or impliedly, to bind the father. Even in cases where the father by his conduct has compelled the child to leave home, the law implies that the father in so doing, still intended that his child should not suffer, but should be supplied with the necessaries of life.

In this case, the plaintiff knew, at the time the defendant's son applied to him for assistance, that the boy was not living with his parent. He was informed that the father lived in this state, and therefore, it seems to us that the arrangement between the father and son, under which the boy had left home, was a matter plaintiff should have inquired into before rendering the services to the boy on the credit of the father. He must have known that sometimes children who have good homes and are supplied with all the necessaries and the luxuries of life, become dissatisfied, and without any reason or excuse, leave home, and that under such circumstances, it would be unjust to hold the parent liable on any contracts made by the infant. It was not necessary that plaintiff should have had actual knowledge that an arrangement existed between the father and son under which the father was released from liability.

The plaintiff claims even though the father had emancipated the son, yet he promised in writing to pay for the services. This contention is based upon a letter that the father wrote to the superintendent of the hospital on September 22, in answer to a letter notifying him that his boy was there sick. In this letter, the

father said: "I have a dear boy in your institution sick with fever. I have sent him some money and will send more soon. You will give him all the attention you can and greatly oblige a father so far away and kindly let me know from time to time how he is getting along."

When this letter was written, a contract existed between the plaintiff and the defendant's son relating to the services sued for in this case. There is no evidence that the letter in any wise changed the relation of the parties or the terms of the contract under which the boy was then being treated, or that any additional attention was given the boy on account thereof. There is nothing in the letter agreeing to pay for the services rendered. On the contrary, the statement is found to the effect that some money had been sent to the boy and more would be forwarded. If the father intended to legally bind himself for the payment of the plaintiff's bill, he did not so state.

After a careful consideration of the case, we have reached the conclusion that the evidence was sufficient to require the court to submit the defense of emancipation to the jury. And as the triers of that fact found for the defendant thereon, the question whether he will pay the plaintiff for the service he and those associated with him earned in caring for his son while he was sick, and perhaps would have perished, had such services not been rendered, must be left to the *interior forum,* as the tribunal of conscience has well been called.

The judgment will be affirmed. All concur.