**SPURGEON v. MISSION STATE BANK.**

No. 1453.

District Court, W. D. Missouri, W. D.
May 26, 1943.

Johnson & Garnett, of Kansas City, Mo., for plaintiff.

Edward S. North and Herschel Washington, both of Kansas City, Mo., for defendant.

REEVES, District Judge.

The question for decision in this case is whether the plaintiff, a minor nearly nineteen years of age, was capable under the law of choosing a residence or domicile different from that of his parents. If so, and if a choice had actually been made, then a diversity of citizenship does not exist and the case should be remanded to the court of its origin. Otherwise, jurisdiction should be retained.

The minor's mother and stepfather reside in Queen City, Schuyler County, Missouri. The minor formerly resided with them at that place. His father died in 1926. His mother remarried in 1932. In the latter part of the year 1942 the minor left home for the purpose of seeking employment.

There was no evidence of a breach of good will, affection and devotion between his mother and himself. Moreover, his relations with his stepfather did not lack cordiality. He left home with the idea of returning but in the meantime he expected to find employment and personally to receive the rewards of his labor. His mother, by deposition, testified that he left home "to make his own way in the world", yet it was without her consent, as she testified, "I didn't want him to leave." After leaving home he wrote several letters to his mother wherein he related his experiences and how he was getting along. His letters were affectionate and filial. For a brief period he resided in Kansas City at a boarding house but later moved to Mission, Kansas, where he had obtained employment. He lived at the place where he was employed. He was inducted into military service and all his statements and acts indicated a purpose to return to his place of employment at Mission, Kansas. His employer had indicated a re-employment at the end of his military service.

Upon the foregoing facts, the defendant contends that, being a minor, he was not competent to determine the place of his residence or domicile and for the purposes of this action his residence or domicile was that of his mother and father. These contentions will be noticed.

1. By Section 374, R.S.Mo.1939, Mo.R.S.A. it is provided that: "all persons of the age of twenty-one years shall be considered of full age for all purposes * * * and until that age is attained they shall be considered minors: * * *."

There are exceptions to this statutory rule of minority not applicable here. Section 375, R.S.Mo.1939, Mo.R.S.A., provides who shall be the natural guardians of minors. The provision is that: "* * * the father and mother, with equal powers, rights and duties, while living, and in case of the death of either parent, the survivor * * * shall be the natural guardian * * * of their children, and have the custody and care of their persons, education and estates; * * *. The parents of such minor child * * * acting as such natural guardian * * * shall be entitled to receive and collect the earnings of such minors, until they reach their majority, and be liable for their support to the extent of such earnings: * * *."

Under this law it is held without exception that the natural guardian of a minor is entitled to the custody and care of such minor unless of course it be established that the parent is incompetent or unfit to have the custody and exercise control over him. Ex parte Smith, 197 Mo.App. 200, loc.cit. 205, 193 S.W. 288; State ex rel. v. Tincher, 258 Mo. 1, loc.cit. 13, 166 S.W. 1028, Ann. Cas.1915D, 696.

In the case of Waters v. Gray, Mo.App., 193 S.W. 33, loc.cit. 35, the St. Louis Court of Appeals succinctly declared the law, when it said: "* * * And while the parents have a right, by nature and by law, to the custody of children, which right should never be denied, except for the most cogent reasons, yet whenever such occasion arises, and such occasions arise, not alone by reason of the lewdness, immorality, or dissipation of the parents, or either of them, but whenever conditions are shown to be such that to continue the custody of the child with the parents, or either of them, would be contrary to the permanent well-being of the child, then that natural right of the parent must give way, for this natural right of guardianship is less paramount than the life, health, or morals of the child."

There is no evidence in this case that the minor's mother is not entirely competent and worthy of maintaining her custody and control over the life of the minor. There is no pretense that she is unworthy. Under the law such right should not be denied her "except for the most cogent reasons." Even by the common law, a surviving parent, if fit, has the right to the custody of the child. 46 C.J. § 9, p. 1224.

2. It is contended by the minor, through his counsel, that he has been completely emancipated so that he is entitled to choose his own domicile. Reliance is placed upon the evidence of his mother, that, when he left, it was to make his own way. In the same deposition she testified that she did not want him to leave. Moreover, all his letters to his mother indicate that the relations of mother and son were not abrogated, nor do such communications breathe any suggestion of emancipation. The fact that he was permitted to work and draw his own compensation did not signify emancipation.

The cases cited and discussed by counsel relate to those cases where the

parent had merely granted a license to the minor to work for wages and draw his own compensation. In the case of Brosius v. Barker, 154 Mo.App. 657, loc.cit. 663, 136 S.W. 18, loc.cit. 20, the Springfield Court of Appeals declared the law when it said that "emancipation is never presumed, and, if relied upon as a defense, must be proven." The court further said that, without declaring general rules, "we hold that where the child, who is physically and mentally able to take care of himself, has voluntarily abandoned the parental roof and turned his back to its protection and influence, and has gone out to fight the battle of life on his own account, the parent is under no obligation to support him." That rule may be implied from the statute which devolves upon the parents the duty to support the minor "to the extent of such earnings" when collected by the parents. In the Brosius case the court was considering the liability of the father for medical attention to the son where the son had been permitted to draw his own wages. At page 662 of 154 Mo.App., at page 19 of 136 S.W., the court indicated what constitutes complete emancipation as follows: "Complete emancipation is an entire surrender of all the rights to the care, custody, and earnings of the child, as well as a renunciation of parental duties. * * * And the test to be applied is that of the preservation or destruction of the parental and filial relations." No one could say that in this case upon the evidence there was a "destruction of the parental and filial relations." On the contrary, such relations continued to exist as indicated by the letters of the minor to his mother. Moreover, the court, on page 662 of 154 Mo.App., on page 20 of 136 S.W., defined "implied emancipation" as follows: "* * * Implied emancipation is where the parent, without any express agreement by his acts or conduct, impliedly consents that his infant child may leave home and shift for himself. * * *" It cannot be successfully urged that the conduct of either the minor or his mother indicated such consent. Although the mother did say that her son intended to go out and make his own way, this was against her consent.

In McMorrow v. Dowell, 116 Mo.App. 289, loc.cit. 298, 90 S.W. 728, loc.cit. 730, the court discussed the question of emancipation but it extended no further than the right of an employer to give employment to a minor and pay him without becoming liable to the parents. The court said: "* * * If a parent knows a child is working for stipulated wages, or in expectation of payment, and knows, too, that the employer and the child understand payment is to be made to the child, and interposes no objection, these circumstances are evidence for the inference that the parent's right was waived. * * *" The court was inclined to designate this as a limited emancipation, rather than a mere license. It appears that the courts have been disposed to use the word "emancipation" in relation to those cases where the parent sought to claim the wages of the minor. The word as a rule has been ineptly used. Very young children are frequently permitted to seek employment, draw their wage and use it for their own spending money. It would be idle to say that this signifies emancipation and that the parents lost control and custody of the children and that they were at liberty to choose their own domicile.

In Woodward v. Donnell, 146 Mo.App. 119, loc.cit. 126, 123 S.W. 1004, loc.cit. 1005, the court discussed the question of the right of the minor to collect his wages and referred to the right as one of emancipation rather than a mere license. In the case of Evans v. Kansas City Bridge Co., 213 Mo. App. 101, 247 S.W. 213, the Kansas City Court of Appeals collated the law on the subject of parental rights over children employed away from home. That was merely a case of emancipation in relation to earnings although recovery was denied to the father on the usual ground that he did not support the minor and therefore was not entitled to maintain suit for the death of his minor son.

In the very early case of Ream v. Watkins, 27 Mo. 516, 72 Am.Dec. 283, the Supreme Court ruled that under the circumstances there given the minor son was entitled to draw his own wages, but that it was the right of the father at his pleasure to resume his authority over the minor son, including his earnings. There could not be complete emancipation under such circumstances and obviously the son could not choose his own domicile.

In the case of Dierker, etc., v. Hess, 54 Mo. 246, Judge Sherwood of the Missouri Supreme Court expressed the rule admirably in upholding the right of the son to

receive wages and acquire property on his own account even though residing with his parents. Again, that fact did not clothe the son with the power to select his own domicile. It was a limited manumission while yet a member of the father's household.

■ 3. Aside from the foregoing discussion the courts have held that a person, while a minor, being non sui juris, cannot choose or change his domicile. That was the ruling in Delaware, L. & W. R. Co. v. Petrowsky, 2 Cir., 250 F. 554, 563. In that case the court said, with reference to the right of the parent to change the domicile of the child, it depended upon "the parent's right to the custody * * * of the child."

■ In the case at bar no one will contend that the mother did not have the right under the law to the custody and control of her son or that she had ever relinquished that right, but, even if so, it was within her power to reclaim it. While that power existed the son could not establish a residence animus manendi, for the reason that his mother had it within her power to determine the place of his residence.

In Wiggins v. New York Life Ins. Co., D.C., 2 F.Supp. 365, 373, the court held, "but, even if he was emancipated, this gives him no power to change his domicile."

An identical ruling was made by one of the judges in Ex parte Petterson, D.C., 166 F. 536, loc.cit. 546. The court said: "* * * Applying the common-law rule to this case, the petitioner °did not reach her majority until the 1st day of December, 1906; prior to that time she was an infant incapable of choosing a domicile for herself, and up to that time her domicile had been that of her parents * * *."

■ It is not necessary to multiply the authorities. The rule is that a fit and upright parent is entitled to the care, custody and earnings of a minor child. This right continues until the minor has attained his majority. Until that right has been extinguished the minor cannot choose his domicile, even though in the meantime a measure of manumission or emancipation is granted in respect to his earnings.

In view of the foregoing, the motion to remand should. be overruled, and it is so ordered.