Steven **CURRY**, a minor, by his mother and next friend, Lucille Curry, Plaintiff,

v.

T. Reed **MAXSON**, M.D., Defendant.

Civ. A. No. 17592–3.

United States District Court, W. D. Missouri, W. D.

July 23, 1970.

Angelo J. Falcone, and Herman M. Swafford, Kansas City, Mo., for plaintiff.

Thad C. McCanse, of James & McCanse, Kansas City, Mo., for defendant.

## JUDGMENT OF DISMISSAL FOR LACK OF DIVERSITY JURISDICTION UNDER SECTION 1332, TITLE 28, U.S.C.

BECKER, District Judge.

In the complaint herein, plaintiff alleges that he was negligently treated for acne by the defendant with the result that his face was scarred and permanently disfigured. Plaintiff demands $65,-000 in damages. Plaintiff asserts federal jurisdiction under the diversity statute, Section 1332, Title 28, United States Code.

Standard Pretrial Order No. 2 was filed herein on June 5, 1970. One of the issues of fact therein set out to be resolved was whether diversity of citizenship between plaintiff and defendant actually existed at the time of filing of this suit. In the stipulation of uncontroverted facts herein and in Standard Pretrial Order No. 2, it is stipulated that plaintiff, at the time of the commencement of this action on July 31, 1969, was "twenty (20) years of age, having been born on June 8, 1950" (sic); that, on July 31, 1969, plaintiff's parents "were residents of Sedalia, Missouri, and citizens of the State of Missouri"; and that defendant is "a physician duly licensed to practice medicine in the State of Missouri."

Since, in the interest of speed, efficiency and economy, it was determined that this issue should be determined prior to trial, the Court, on June 12, 1970, issued a memorandum to counsel requesting briefs on the issue of the citizenship of plaintiff in this case.

Defendant's brief was filed on June 25, 1970. Plaintiff's brief was filed on July 6, 1970. And defendant's reply brief was filed on July 9, 1970.

 The legal principles governing the issue of citizenship are clear and well established. Citizenship at the time of the commencement of the action determines whether diversity of citizenship exists for federal jurisdictional purposes. Schlafke v. Van Dorin (W.D.Mo.) 313 F. Supp. 190. In a suit by an infant brought

by the next friend, it is the citizenship of the infant which controls diversity issues and not the citizenship of the next friend. Ziady v. Curley (C.A.4) 396 F.2d 873; Appelt v. Whitty (C.A.7) 286 F.2d 135. The citizenship of an infant is presumed to be the same as that of his father or surviving parent. Hannah v. Majors (W.D.Mo.) 35 F.R.D. 179. The question of whether an infant might be emancipated so that he might establish a citizenship independently of his father or other surviving parent is controlled by the law of the state of the citizenship of the parent or parents. Spurgeon v. Mission State Bank (C.A.8) 151 F.2d 702. Under the diversity statute, citizenship and domicile are synonymous. Russell v. New Amsterdam Cas. Co. (C.A.8) 325 F.2d 996. Under the law of Missouri, an infant cannot be considered emancipated in the absence of either express or implied consent of the parents. Spurgeon v. Mission State Bank, *supra*; Wurth v. Wurth, Mo., 322 S.W.2d 745, en banc, Wurth v. Wurth, Mo.App., 313 S.W. 2d 161. The burden of proof of emancipation rests upon the party asserting the emancipation of the minor. Wurth v. Wurth, Mo., 322 S.W.2d 745, en banc. Plaintiff relies upon the following factual allegations in contending that he was, at the time of the filing of the complaint herein, emancipated from his parents and a citizen of the State of Kansas:

"[P]laintiff quit his employment at the Rival Manufacturing Company in Sedalia and moved to the Kansas City area. He obtained a job as a welder, an occupation he had performed before, at the Kansas City Structural Steel Company in Kansas City, Kansas. He rented an apartment in Kansas City, Kansas. He titled his car in the State of Kansas. He intended to be a resident of Kansas, (page thirteen, line 23 and page fourteen, lines twelve and thirteen [of plaintiff's deposition]). He was his sole support and received nothing from his father nor mother (pages 14 and 15). He remained in Kansas from April, 1969, to August, 1969, and left only when he learned

that he was to be drafted. He returned to live with his grandmother at Sedalia, waiting his impending induction into the armed forces." (sic)

On the above facts, and assuming all the factual contentions and allegations made by plaintiff (other than the conclusory allegation of the complaint that "Plaintiff is a citizen of the State of Kansas") to be true, it must be concluded that, at the time of the commencement of this action, plaintiff was an unemancipated minor who was a citizen of Missouri, rather than of Kansas, and therefore that his citizenship is not diverse from that of the defendant, who is also a Missouri citizen. Under the law of Missouri:

"Complete emancipation is an entire surrender of all the rights to the care, custody, and earnings of the child, as well as a renunciation of parental duties. * * * And the test to be applied is that of the preservation or destruction of the parental and filial relations." Brosius v. Barker, 154 Mo. App. 657, 662, 136 S.W. 18, 19.

"The law will not permit the natural relationship between parent and minor child to be lightly controlled or disturbed by other considerations." Wurth v. Wurth, *supra*, 313 S.W.2d at 165. Under the facts relied on by plaintiff, there has been no express agreement of the parents of plaintiff to renounce their parental rights or to emancipate plaintiff. Therefore, plaintiff must necessarily rely upon the theory of "implied emancipation." In Brosius v. Barker, *supra*, "implied emancipation" is defined as a situation wherein "the parent, without any express agreement by his acts or conduct, impliedly consents that his infant child may leave home and shift for himself." 136 S.W. at 20. On the facts relied upon by plaintiff, there is no clear statement of any implied consent on the part of plaintiff's parents that he might leave home and shift for himself. In fact, in the deposition testimony expressly relied upon by plaintiff, it does not appear that his parents ceased to support him or that he was his own sole support after

moving to Kansas. Substantially, plaintiff testified that he left Missouri after having received the allegedly substandard medical treatment from defendant at his parent's requests; that he "lost all confidence" in his parents; that his father had not contributed to his support since he was fourteen years of age; but that his mother had continued to pay his "doctor bills" throughout the time after he had left the parental home and gone to live with the grandmother in Sedalia; that he continued to expect her to pay the "doctor bills" of "Dr. Maxson and Dr. Sauer" at the date of the taking of the deposition, November 18, 1969; and that he had not made any agreement with his father and mother agreeing that he was "on his own". Further, it is clear from the face of the complaint, wherein plaintiff's mother is acting as his next friend in bringing this suit, that the parental tie still persisted as of August 4, 1969, when she was named next friend by the order entered herein. Still more persuasive is the fact that plaintiff's mother signed the consent to serve as next friend on July 30, 1969, the day before the filing of the complaint in this case. Thus, from the facts of record, even assuming all of plaintiff's factual allegations to be true in accordance with the rule of Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80; Great Atlantic & Pacific Tea Co. v. Amalgamated Meat Cutters & Butcher Workmen of North America (C.A.8) 410 F.2d 650; and Leimer v. State Mut. Life Assur. Co. (C.A.8) 108 F.2d 302, it is clear that there has been no emancipation of the infant plaintiff in this case to allow him to obtain a citizenship in Kansas. Even so, plaintiff's reliance on his deposition testimony to the effect that he intended to be a "resident" of Kansas during his brief stay there does not suffice for evidence of his intent to make his domicile in Kansas. It is well settled that a statement of residence is not tantamount to a statement of domicile or of citizenship. Russell v. New Amsterdam Cas. Co., supra. In the same case, it was held that statements of intention to be a citizen of a certain state are entitled to little weight when in conflict with facts which show otherwise. That is the case at bar, wherein plaintiff's brief stay in Kansas, the continued payment of his medical expenses by his mother, and her agreement to serve as his next friend the day before the commencement of this action, in the absence of any express agreement of the parents to emancipate plaintiff, show clearly that plaintiff was not emancipated and that, therefore, his citizenship must be deemed to be the same as that of his parents.

Plaintiff places some reliance on the decision of the United States Court of Appeals for the Eighth Circuit in Spurgeon v. Mission State Bank, supra, where an 18 year old minor, who went to Kansas from Missouri with an intent to make his own way in the world, was deemed to be emancipated. But in that case, the Court held that there was clear consent and agreement by the mother of the infant "to the son's departure from the parental roof to make his way in the world." 151 F.2d at 705. Such is not the case at bar, wherein plaintiff has stated neither express nor implied consent by his parents, or either of them, to his brief residence in the State of Kansas.

It must therefore be concluded that plaintiff was a citizen of the State of Missouri at the time of the filing of the complaint herein. Further, plaintiff has stated in his complaint that defendant is also a citizen of Missouri. Therefore, there is no diversity of citizenship in this case as required for federal jurisdiction in cases of this kind under § 1332, supra, and this cause must accordingly be dismissed.[1] It is therefore

[1]. The absence of diversity of citizenship cannot be waived by the parties and may be raised by the Court on its own motion, even on the appellate level. Interior Construction & Improvement Company v. Gibney, 160 U.S. 217, 16 S.Ct. 272, 40 L.Ed. 401; Uryga v. Ragen (C.A.7) 181 F.2d 660, 664. To fail to dismiss this case might result in the loss of the plaintiff's right to a trial on the merits if sometime over two years after the claim for relief accrued this Court or the ap-

Adjudged that this cause be, and it is hereby, dismissed for lack of diversity jurisdiction.

pellate court would dismiss the case for lack of jurisdiction. American Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702. Attention is invited to the short, two-year Missouri statute of limitations on malpractice ac-tions. Section 516.140 RSMo. The circumstances in this case are unlike those in a removed case which would simply be remanded on the discovery of lack of diversity jurisdiction.