Mary Jane SPECKING, Appellant,

v.

Robert Bernard SPECKING, Respondent,

and

Mark Twain Northland Bank, Garnishee of Robert Specking.

Mary Jane SPECKING, Appellant,

v.

Robert Bernard SPECKING, Respondent.

Nos. 35783, 35868.

Missouri Court of Appeals,
St. Louis District,
Division Four.

June 24, 1975.

As Amended Aug. 26, 1975.

Motion for Rehearing or Transfer to Court En Banc or Transfer Denied Sept. 8, 1975.

Application to Transfer Denied Nov. 10, 1975.

Joseph H. Langworthy, Jr., Pacific, for appellant.

Fitzsimmons & Fitzsimmons, Attys., Inc., Daniel J. McMichael, Clayton, for respondent.

ALDEN A. STOCKARD, Special Judge.

By a divorce decree entered on February 29, 1972, Mary Jane Specking was awarded custody of twin daughters Carolyn Marie and Catherine Mary, born May 13, 1954. The decree provided that "plaintiff [Mary Jane Specking] have and recover of said defendant [Robert Bernard Specking] the sum of $95.00 per month as and for the support of each said minor child; * * *." There was no provision in the decree as to when or under what circumstances the support payments should terminate. However, by the use of the term "said minor child," the implication is that the support payments should continue during minority, or until emancipation.

Most, if not all, important facts are stipulated. On September 9, 1972, Catherine Mary was married, and respondent has not paid any support for her since that date.

On July 15, 1972, Carolyn Marie "moved away from the home [of her mother] with the purpose of taking a part-time job doing housework and child care for a former high school counselor of hers and receiving room, board, some pay and part-time use of a car,

and with the intention of being helped to be admitted to Meramec Junior College as a student. It was her conception that she had to be a resident of St. Louis County to be so admitted. [Her mother] lived in the City of St. Louis. Carolyn Marie later worked part time at Meramec Junior College doing clerical work. Carolyn Marie moved to live with an older sister and her husband in St. Louis County, and with some financial help from them enrolled in Meramec Junior College as a student. She is now working part time at 2c Plain [sic], earning $1.40 per hour in addition to her studies." Respondent has not paid any support for Carolyn Marie since July 15, 1972.

On July 13, 1973, appellant sought an execution by garnishment against the Mark Twain Northland Bank in the amount of $1,163.00 plus interest and costs.

On July 12, 1973, respondent filed a motion to quash the writ of garnishment on the grounds (a) that Catherine Mary was married on September 9, 1972, and therefore was emancipated and respondent's duty to pay support for her pursuant to the above decree was terminated; (b) that Carolyn Marie had moved out of her mother's house on July 15, 1972, and "is self-supporting and receiving no aid and assistance" from appellant, and for such reasons was emancipated, and therefore respondent's duty to pay support for her was terminated; and (c) the writ of garnishment was served on Mark Twain Northland Bank as garnishee, and the only account there in which respondent has an interest is "under joint ownership of [respondent] and Mrs. Manila M. Specking" not subject to this garnishment.

On August 7, 1973 the trial court entered the following order: "Defendant Robert B. Specking's Motion to Quash Writ of Garnishment heard and sustained." Appellant thereafter filed three motions; one for leave to appeal as a poor person, another that she be allowed the sum of $500 for "suit money," and the third for a new trial "on defendant's motion to quash writ of garnishment." All of these motions were overruled on October 22, 1973, but on October 25, 1973, the court, on its own motion, set aside its denial of the motion to appeal as a poor person, and a hearing thereon was ordered to be held on November 13, 1973. On October 25, 1973, appellant filed her notice of appeal "from the appealable order sustaining defendant's motion to quash the writ of garnishment entered * * * on the 7th day of August 1973."

■ On November 19, 1973, the court stated that it had previously set aside its ruling on the motion to appeal as a poor person and also on the motion for suit money, and that these matters would then be heard. It was at this time that the stipulation of facts between the parties was entered of record. After hearing the trial court again overruled the motions for suit money and to appeal as a poor person. Ten days later appellant filed a second notice of appeal, this "from the order denying plaintiff's motion for allowance of suit money on appeal and motion for leave to appeal as a poor person." Apparently this is the reason that this case is assigned two case numbers. Strictly speaking, the first appeal was premature because all issues were not disposed of at the time the appeal was taken, and the second notice of appeal does not purport to be from the order quashing the garnishment in aid of execution. However, Rule 81.05 provides that in any case in which a notice of appeal has been filed prematurely, such notice shall be considered as filed immediately after the time the judgment becomes final for the purposes of appeal. We shall consider this case as one appeal.

■ Appellant's first point is that the oral motion to dismiss the writ of garnishment should not have been sustained because it was not verified as required by Rule 76.60. The verification should have been made by respondent, and when the issue was raised he was in the courtroom and could then have made the verification. We see little excuse for counsel to unnecessarily create issues on technical procedural

matters. Also, Rule 76.60 was taken from, and is substantially the same as § 513.360 RSMo 1969. In *State ex rel. Jones v. Howe Scale Co. of Illinois,* 203 Mo.App. 350, 218 S.W. 359 (1920), it was held that the statute "does not exclude the ordinary remedy by motion to quash, unsupported by affidavit made in open court in term time." The court in overruling the motion to quash stated that it understood that respondent was in the courtroom and would testify. However, he did not in fact testify, but appellant expressly waived the need for any testimony from respondent. The point is totally without merit.

Appellant next contends that the trial court erred in ruling that Catherine Mary was emancipated when she became married, and that Carolyn Marie was emancipated when she left her mother's home.

"As a general rule an order for the support of a minor child, entered in an action for a divorce, separation, or the like, terminates automatically, or becomes inoperative, when the child marries and leaves the custodian's home." Annotation: *Marriage of minor child as terminating support provisions in divorce or similar decree,* 58 A.L.R.2d 355. See also *Berglund v. Berglund,* 474 P.2d 800 (Colo.App.1970). This is the rule in Missouri. See *Meyer v. Meyer,* 493 S.W.2d 42, 46 (Mo.App.1973), where it was ruled that the marriage of a minor child "operated to terminate the father's obligation of support, even though no action was taken by him for a modification of the decree." It is admitted that respondent paid to appellant the required child support for Catherine Mary until the date of her marriage, at which time she left the home of appellant to whom custody had been awarded. We are not unmindful of the opinion of this court in *Schaffer v. Security Fire Door Company,* 326 S.W.2d 376 (Mo. App.1959). It pertained to the issue of whether emancipation resulted from military service and is not controlling of this case. The trial court properly ruled that Catherine Mary was emancipated by her marriage.

As to Carolyn Marie, respondent relies primarily on *Brosius v. Barker,* 154 Mo.App. 657, 136 S.W. 18 (1911). It involved the issue of whether a child was emancipated and the father therefore not being liable for its medical care. It was there stated: "There are two kinds of emancipation, express and implied. Express emancipation takes place when the parent agrees with his child, who is old enough to take care and provide for himself, that he may go away from home and earn his own living, and do as he pleases with the fruits of his labor. Implied emancipation is where the parent, without any express agreement by his acts or conduct, impliedly consents that his infant child may leave home and shift for himself." " * * * Without further declaring general rules, we hold that where the child, who is physically and mentally able to take care of himself, has voluntarily abandoned the parental roof and turned his back to its protection and influence, and has gone out to fight the battle of life on his own account, the parent is under no obligation to support him."

The facts of the *Brosius* case are in no way comparable to those of this case. There, at age 20, a son left his father's home in Missouri and went to Oregon where he "started out for himself." He there contracted typhoid fever, and the suit pertained to the doctor's claim against the father for medical expenses. In this case the circumstances of Catherine Mary leaving home were set forth in the stipulation quoted above.

Under the law of this State emancipation of a minor child is never presumed, *Brosius v. Barker,* supra, and the express or implied consent of the parents, or at least of the one having custody, is required. *Curry v. Maxson,* D.C., 318 F.Supp. 842 (1970). The burden of proving emancipation is on the party asserting it. *Wurth v. Wurth,* 322 S.W.2d 745 (Mo.1959).

The evidence does not establish an express emancipation of Carolyn Marie. As

previously noted, most of the evidence is by way of stipulation and Carolyn Marie did not testify. We do not have the situation as in *Burton v. Burton,* 472 S.W.2d 620 (Mo.App.1971), where the minor testified and clearly established emancipation. If Carolyn Marie was emancipated, that fact must be implied from the facts. She first went to stay with a school counselor to obtain help in entering a Junior College. She later lived with a married sister, attended school, and worked either part or full time. The only evidence concerning the release of custody by appellant who had legal custody, was the stipulation that appellant "would testify, over [respondent's] objection that her statement was self-serving and immaterial, that plaintiff had no intention of giving up custody or control of Carolyn Marie when she moved away from home." Appellant in fact did testify, but she was not asked about her intent to release or not to release custody, and she testified to no facts concerning Carolyn Marie leaving home that are not contained in the stipulation. Apparently appellant contributed little to her support after she left home, but if we are to engage in inferences, we could as logically infer that she did not contribute because she received no support money from respondent.

A parent having custody may give a minor child a license to work and retain its earnings. We can see nothing in the factual situation of Carolyn Marie leaving home other than that with her mother's consent or license she left after completing high school in an effort to continue her education. In the process of doing so she lived for awhile with the school counselor and then with her married sister, and she obtained employment, full time during the summer and part time during school. This is a common practice for students who attend college. We are of the opinion that respondent has not met his burden of establishing emancipation, and that the facts do not justify such a finding.

Appellant also assigns as error the refusal of the trial court to sustain her motion to appeal as a poor person and to allow her suit money for this appeal. She cites no authority to be permitted to appeal as a poor person and has presented no argument in support of her contention. We consider that contention to have been abandoned.

The allowance of suit money is a discretionary matter with the trial court. *Burton v. Burton,* supra, and in view of the disposition of this appeal that issue may be considered by the trial court in subsequent proceedings.

We do not reach the issue of the right of appellant to recover from the garnishee the money held by it in the joint account as stated in the motion to quash.

The judgment is reversed and the cause remanded for further proceedings in accord with the views here set forth.

SMITH, C. J., and NORWIN D. HOUSER, Special Judge, concur.