Robert Jon BOPP,
Plaintiff-Appellant-Respondent,

v.

Sharon Lee BOPP,
Defendant-Respondent-Appellant.

Nos. 47161, 47201.

Missouri Court of Appeals,
Eastern District,
Division One.

May 1, 1984.

R. Jon Bopp, pro se.

Joel Case, Manchester, for Sharon Lee Bopp.

SNYDER, Presiding Judge.

This appeal by the husband arises from a judgment on a motion to modify a dissolution decree and to cite the wife for contempt. The wife also appealed from the judgment denying her attorney fees. The judgment is affirmed.

The husband based his motion to modify on the contention that Carla Jean Bopp, the parties' 17-year-old daughter, is emancipated. She spent the entire 1982–83 school year in Florida at the Florida residence of her natural father, the appellant-husband here being her adoptive father.

The husband also sought to have the wife cited for contempt because she permitted Carla to remove her residence from the State of Missouri to Florida in violation of § 452.375.6 RSMo.Supp.1983 and the terms of the dissolution decree which prohibited moving the children to another state without prior specific court authorization.

The husband alleges the trial court erred in: 1) failing to find that Carla was emancipated; 2) failing to abate child support for Carla during her stay in Florida even if she was not emancipated; 3) failing to find the wife in contempt; 4) permitting Carla to attend school outside Missouri's jurisdiction without imposing specific conditions; and 5) assessing costs against the husband in contravention of § 452.400.4 RSMo.Supp. 1983.

The wife, by a previous marriage to Alphonse William Lepore, had two children, Carla Jean Lepore, born May 12, 1966 and Jeffrey Paul Lepore, born July 31, 1967. The Lepore marriage was dissolved on December 23, 1969.

On September 22, 1973, the wife and Robert Jon Bopp were married in St. Louis County. During the marriage, the husband adopted both children. Lepore, the natural father, failed to file an answer or appear at the adoption hearing, and the court found that he had willfully abandoned and neglected the children.

The parties' marriage was dissolved on August 18, 1980. The wife was awarded custody of the two children. The decree of dissolution further provided that the residence of the minor children should not be changed from the State of Missouri without the specific authorization of the court. The husband was granted reasonable visi-

tation rights, temporary custody and ordered to pay $250.00 per month, per child, in child support.

Subsequent to the dissolution, the wife's relationship with their daughter, Carla, began to deteriorate. The wife testified that they "were not getting along;" that Carla "was not doing well in school;" and that Carla was associating with undesirable persons.

In June, 1982, Jeffrey and Carla went to visit their natural father, Lepore, who resides in the state of Florida with his present wife and their son. Jeffrey returned to St. Louis in August, 1982 and his support payments are not at issue here.

After a brief visit to St. Louis, Carla decided to stay with her natural father. She returned to Florida and attended the 1982–1983 school year at a public high school there. These events occurred without the knowledge or permission of the court or the husband.

The wife testified that she felt that the smaller town, different atmosphere, supervision and mandatory change of friends would be beneficial for Carla. Thus she did not dispute Carla's sojourn in Florida, but she denied that Carla's residence had been changed.

The Lepores, in turn, have taken an active interest in Carla's education by discussing her grades with her instructors and arranging for a tutor. Lepore signed various school documents as Carla's guardian. From the record, it appears that Carla was treated as a member of the family.

Carla continued to live in Florida after June, 1982, with the exception of a few days in August, 1982 and some time during the Thanksgiving and Christmas holidays. The Lepores have not demanded reimbursement from either the wife or the husband and no money was paid to them. Carla has not been employed while in Florida. The wife testified that her relationship with Carla had improved and that she kept in weekly contact with her daughter.

During this period, the husband continued to make child support payments of $250.00 a month each for Carla and Jeffrey. This money was placed in the wife's checking account. From this account, a total of $210.00 in checks were made out to Carla; all but $20.00 of it was sent subsequent to the filing of the husband's motion to modify. The wife had given Carla additional money for spending, clothes and school supplies, carried insurance for Carla, and paid her air fares between St. Louis and Florida. The testimony as to exact amounts was vague. The wife also testified that she saves $50.00 each month for Carla's college, but the account is in the wife's name.

In October, 1982, the husband filed a motion to modify the decree seeking a declaration that Carla had been emancipated and the termination of his obligation to pay future child support for Carla. He also sought to have past child support payments "abated" and to have the wife cited for contempt. The wife filed a cross-motion to modify seeking an order allowing Carla to attend school in Florida and attorney fees.

The trial court entered a judgment in which it denied the husband's motions to modify and to hold the wife in contempt. The court granted respondent's cross-claim motion to modify by finding that Carla was not emancipated and permitting her to attend school outside Missouri's jurisdiction until further order of the court. The court denied the wife's request for attorney fees and she cross-appealed this portion of the judgment. Costs were assessed against the husband. The appeals were consolidated upon the wife's motion.

The judgment of the trial court must be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. An appellate court may set aside a decree or judgment on the ground that it is against the weight of the evidence only with caution and with a firm belief that the decree or judgment is wrong. *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976).

In the husband's first point he alleges trial court error in the finding that Carla is not emancipated. The point is denied.

Section 452.370.3 RSMo.Supp.1982 provides that emancipation of a child terminates child support payments. The husband's contention that his daughter is emancipated is based solely upon her living in Florida with her natural father, who is claimed to occupy the status of a person in loco parentis.

Emancipation involves the relinquishment of parental control and the parents' legal obligation to support the child. *French v. French,* 599 S.W.2d 40, 41 (Mo. App.1980). Emancipation of a minor child is never presumed, *Brosius v. Barker,* 154 Mo.App. 657, 136 S.W. 18, 20 (1911); and the express or implied consent of the custodial parent to the child leaving the home to provide for himself is required. *Specking v. Specking,* 528 S.W.2d 448, 451 (Mo.App. 1975), citing *Curry v. Maxson,* 318 F.Supp. 842 (D.C.Mo.1970). The burden of proving emancipation is on the party asserting it. *Wurth v. Wurth,* 322 S.W.2d 745, 746 (Mo. banc 1959).

A child may be emancipated in three ways. *Orth v. Orth,* 637 S.W.2d 201, 205[2, 3] (Mo.App.1982). The first is by express parental consent. The second is by implied parental consent. Emancipation is accomplished under the third method by the child's change of status in the eyes of society, for example, by marriage or entry into the military service.

Carla did not marry or enter military service, nor did she undergo any other change in her societal status which would bring about emancipation. Her custodial parent did not expressly consent to emancipation. Therefore, the determinative question is whether there was implied parental consent to emancipation. There was not.

Emancipation can occur only when a child is old enough to take care of and provide for herself. *Orth v. Orth, supra,* at 205[4–6]. There was no evidence that Carla could provide for herself. Carla did not testify, but the evidence showed that she was fully supported by her father and the Lepores. The wife testified she had no intention of giving up custody and control of Carla. There was no implied parental consent.

The husband's theory that Carla was emancipated because Mr. Lepore is a person in loco parentis is a novel one, but not tenable. The cases he cites do not relate to emancipation, but only to claims for support money by persons standing in the relationship of in loco parentis. There was no substantial evidence to support a finding of emancipation and there was substantial evidence to support the trial court's contrary finding. *Murphy v. Carron, supra.*

In his second point the husband alleges the trial court erred in denying his motion to abate child support even if Carla was not emancipated. The point is not well taken.

The husband prays for "abatement" of the child support after June 1982, the time when Carla first went to Florida. His motion was filed on October 25, 1982.

A trial court does not have authority to modify a dissolution decree retroactively. § 452.370.1 RSMo.Supp.1982. Therefore, the trial court had no discretionary authority to order a modification or abatement of the child support prior to October 25, 1982. *State ex rel. Williams v. Williams,* 647 S.W.2d 590, 593[5] (Mo. App.1983).

The trial court, however, may make a modification order effective on the date the motion is filed. *Holt v. Holt,* 633 S.W.2d 171, 173[3, 4] (Mo.App.1982). Therefore, given the proper pleadings and factual determinations, the trial court here could have ordered a modification effective on October 25, 1982.

Although this court understands the husband's frustration with the circumstances as they developed for his daughter, he asked only for a declaration that Carla was emancipated and termination of all future child support for her. He did not ask for a reduction in child support at any time. Even in his point relied on, the husband alleges trial court error in "not abating" the support.

No income and expense or financial statements were filed by the parties, as

required by the local rules of the trial court in cases of motions to modify. Apparently the hearing was held primarily on the issue of emancipation. There was no evidence of Carla's needs or the husband's ability to pay. There was only evidence, albeit inexact, of the amounts spent by the wife for Carla's support. There was no error in failing to abate or reduce the child support payments.

In the husband's third point he charges the trial court erred in failing to cite the wife for contempt because she allowed Carla to leave Missouri for a period longer than ninety days in violation of RSMo. § 452.375.6 RSMo.Supp.1983, and a term of the dissolution decree. This contention, too, is without merit.

Section 452.375.6, RSMo.Supp.1983 prohibits a custodial parent from changing the residence of the child to another state or removing the child from this state for more than ninety days except on order of the court or written consent of the other party who is entitled to custody or visitation rights.

Petitioner sought to have the respondent cited for contempt. Thus it is necessary to turn to RSMo. § 452.400.4 RSMo.Supp.1983 which confers authority upon the courts to "utilize any and all powers relating to contempt" where a parent has unreasonably denied or interfered with the visitation rights of the other.

■ In child custody and visitation cases, courts have not imposed the harsh sanction of contempt upon a parent unless his disobedience of the court's decree is willful and intentional. *Shanks v. Shanks,* 603 S.W.2d 46, 48 (Mo.App.1980). There was no evidence that the wife's decision to allow Carla to attend school in Florida was a willful and intentional violation of the terms of the dissolution decree. The husband, for whatever reason, had not exercised his temporary custody or visitation rights since the dissolution. The wife believed the Florida arrangement was in Carla's best interests. The trial court agreed with her.

■ The scope of review in civil contempt cases is that the ruling of the trial court will not be disturbed unless the ruling was a clear abuse of discretion. *Shanks, supra.* There was no abuse of discretion here.

In the husband's fourth point he complains the trial court should have been more specific in its order permitting Carla to attend school outside Missouri's jurisdiction. In his fifth point the husband alleges the trial court erred in assessing costs against him.

An extended discussion of these last two points would have no precedential value. They are denied in compliance with Rule 84.16(b).

■ The wife appeals from that portion of the trial court's judgment which required her to pay her own attorney's fees.

This court finds there was no abuse of the trial court's broad discretion when it denied the wife's motion for attorney fees. *In re Marriage of Dusing,* 654 S.W.2d 938, 947 (Mo.App.1983).

The judgment is affirmed.

STEWART and PUDLOWSKI, JJ., concur.