**Mary Martha (Marcum) BRUNDIGE, Respondent,**

v.

**Lee Jay MARCUM, Appellant.**

**No. WD 36366.**

Missouri Court of Appeals, Western District.

July 16, 1985.

Jimmie D. James, Independence, for appellant.

Donald V. Pierce, Jr., Kansas City, for respondent.

Before BERREY, P.J., and DIXON and KENNEDY, JJ.

PER CURIAM:

The father sought to have his obligation to pay child support terminated by modification of the dissolution decree. The mother responded with a motion for contempt against the father based on his failure to pay child support and the trial court issued an order to show cause to the father. The motion to modify and the order to show cause were consolidated and tried to the court. The trial court overruled both motions and quashed the order to show cause. The father appeals alleging that the mother lacked standing to prosecute the motion for contempt and that the trial court erred in overruling his motion to modify and in finding him to be in arrears on his child support payments.

Appeal from order overruling wife's motion for contempt and granting order to show cause is dismissed. Order overruling motion to modify affirmed.

The parties' marriage was dissolved on June 20, 1974. The decree awarded the wife custody of the two minor children (a daughter born February 22, 1964, and a son born February 8, 1966), and $255.00 per month for support of the two children. The property settlement agreement, incorporated into the decree, provided that for income tax purposes the wife had the right to claim the daughter as an exemption and the father had the right to claim the son as an exemption.

The father paid the $255.00 monthly child support as ordered until March, 1981, and the mother retained custody of both children until sometime in late 1980. At that time, the son went to live with the father. Shortly thereafter, the father had a stipulation drawn up by his attorney and signed by the mother. The stipulation, purporting to modify the custody arrangement and to terminate the father's obligation to pay child support, read in relevant part as follows:

Come now the petitioners in the above entitled cause, Mary Martha Marcum and Lee Jay Marcum, and hereby stipulate and agree as follows:

1. That, subject to the approval of the Court, the custody of [the son] be granted to Lee Jay Marcum, petitioner herein, and that further, subject to the approval of the Court, the child support obligations of Lee Jay Marcum, petitioner herein, to Mary Martha Marcum, petitioner herein, be and it is hereby terminated.

2. That hereafter each party be solely responsible for the care, custody and control and support of the respective child in his or her respective custody.

The stipulation was never presented to the court for approval and the father does not recall ever signing it; however, he testified that he subsequently acted in accordance with the document. The father also testified that as a condition to the agreed stipulation, he was to buy the daughter a car. The mother denies that the parties reached an agreement to modify the decreed child support and she testified that she signed the stipulation under the duress of being denied visitation with the son.

In any event, the father did purchase the daughter a car in August, 1981, and it remained in her possession approximately one year. Throughout this period, with the

exception of the first four months in 1982, the father made monthly payments on the car. The daughter, with help from the mother, made the four $180.00 payments which the father was unable to make due to his being laid off from work. The car was returned to the father when it became known that he intended for the car to serve in lieu of child support and that it was titled in his name.

From March, 1981, to July 9, 1984, the time period covered by this action, the father made a total of six $127.50 payments to the mother. Two of these payments, one designated as child support for the daughter and one for the son, were made in each of three months: November, 1982, December, 1982, and February, 1983. The February payments were intended to be for January, 1983. These six payments were apparently made because the son was residing with the mother at that time.

As stated above, the son went to live with the father in late 1980. From that time until May, 1983, the son changed residences fairly often. He lived sometimes with the mother, sometimes with the father, and sometimes in the custody of the juvenile authorities. In addition, he was hospitalized for an extended period of time in the summer of 1982. On May 28, 1983, the son was married and established his own household.

The daughter, also, on two occasions, left the home provided by the mother. The daughter graduated from high school in June, 1982, and shortly thereafter and with the mother's approval, she moved to an apartment with a roommate. That September she started college, taking four classes for five hours' credit, and in October she returned to the mother's house for financial reasons. She testified that she was able to meet her half of the apartment expenses for July through September and for October with help. Her mother was paying for her tuition and books, and her father was providing her with a car at the time. The daughter returned to the apartment for a period of one to three weeks in January, 1984, after having an argument with the mother.

The daughter completed her first semester of college and then elected not to continue her education. Throughout the period considered, the daughter worked continuously at a variety of jobs. Her work history as of the date of trial was as follows:

| Dates | | | Rate of Pay or |
|---|---|---|---|
| From—To | Employer | Position Held | Income Monthly |
| 3/81–8/81 | Fashion Conspiracy | Sales Clerk | $3.35 per hour |
| 7/81–1/83 | Thriftway-Muehlbachs | Checker | $4.00 per hour |
| 1/83–2/83 | Hardwood Originals | Sales Clerk | $165.00 per week |
| 3/83–9/83 | Safeway Stores | Checker | Started at $3.50 per hour, ended at $4.25 per hour |
| 9/83–? | Golden Corral | Waitress | $2.10 per hour plus tips |
| | | Line Person | $3.40 per hour |
| 6/84–7/84 | General Instrument | Assembly Packer | $6.25 per hour (40 hours per week) |

About the time the daughter moved back to the mother's house in October, 1982, she returned the car the father had been purchasing. In January, 1983, she bought another car. At the time of the trial, the daughter testified that her monthly ex-

penses consisted of a $215.00 car payment, a $62.00 car insurance payment, and a $100.00 average gasoline expense. Accordingly, she testified that she had the following income after expenses and deductions: $80.75 while employed at the Golden Corral Restaurant and $399.51 at her current job with General Instrument. She indicated that she would not be able to support herself on either income.

The daughter pays no rent to her mother and she is provided with meals and a private bedroom and bathroom. The bedroom contains an extension telephone which is paid for by the mother. The daughter has dinner with the family, takes part in family activities, has household chores, and is subject to the rules of the house. In particular, she is required to keep the mother informed of her whereabouts and leave a phone number where she can be reached. The mother helps the daughter with her problems and with budgeting and pays her excess bills.

I

 The father's first point on appeal alleges that the mother lacked standing to prosecute the contempt in that prior to this action a trustee had been appointed, pursuant to section 452.345, RSMo.Supp.1984, to receive child support payments. This point is not cognizable before this court in that the father does not satisfy the jurisdictional prerequisites with regard to it. In light of the fact that the mother's motion for contempt was overruled and the order to show cause was quashed, the court's refusal to dismiss that motion did not adversely affect the father in any way. Therefore, he is not an aggrieved party within the meaning of section 512.020, RSMo 1978, and consequently he has no right to appeal. *Conrad v. Herndon,* 572 S.W.2d 216, 219 (Mo.App.1978). The question of whether a party is aggrieved so as to be entitled to appeal is jurisdictional and it may be raised at any time and by the court itself. *Crigler v. Frame,* 632 S.W.2d 94, 95 (Mo.App. 1982). The appeal is therefore dismissed.

II

The father's other point relied on argues that the trial court erred in refusing to terminate his obligation to pay child support and in finding him to be $9435.00 in arrears on such payments. He claims that the evidence showed that the parties had agreed to terminate the child support and that both children were emancipated.

We will consider first the correctness of the trial court's finding regarding the child support arrearages. The father freely admits that from March, 1981, to July 9, 1984, he made only six $127.50 child support payments toward the $255.00 monthly amount ordered by the dissolution decree. He does not contest the calculation of the amount of unpaid child support for the stated period as being $9435.00, but rather he maintains that his liability for such support had been terminated. Likewise, the father does not press the meritless argument that the money he expended in providing his daughter with a car constituted child support. *See Royall v. Legislation and Policy Division, Bureau of Retirement Insurance & Occupational Health,* 610 S.W.2d 377 (Mo.App. 1980).

 The father does contend that his obligation to provide child support was terminated by an agreement the parties entered into shortly after the son went to live with the father in October, 1980. We note first that there was sufficient evidence from which the trial court could find that any agreement by the mother to terminate child support was made under duress and that any such agreement failed on its own terms, as expressed in the stipulation, since the condition of court approval was not satisfied. However, even assuming that the mother did freely agree to termination of the father's obligation for child support and that the agreement was not intended to be expressly conditioned on the court's approval (matters we need not and do not decide), the obligation was not thereby terminated. Only a court has the power to alter future child support payments, and that authority may not be circumvented by

contract. *Holt v. Holt*, 662 S.W.2d 578, 580 (Mo.App.1983).

The father further argues that the finding of arrearages was incorrect in that both children were emancipated. The resolution of the emancipation issue is also dispositive of the question of whether the trial court erred in refusing to terminate child support.

Emancipation of a child under the age of majority, which continues for child support purposes to be twenty-one, *Orth v. Orth*, 637 S.W.2d 201, 205 (Mo.App.1982), results from the relinquishment of parental control and it may occur in various ways. *Rapplean v. Patterson*, 631 S.W.2d 693, 694 (Mo.App.1982). In addition to emancipation by change of status (especially by marriage or entry into military service), a child with the potential to support himself may become emancipated by the express or implied consent of the custodial parent. *Orth*, 637 S.W.2d at 205. Consensual emancipation occurs when there is a "freeing of a child for all the period of its minority from the care, custody, control, and service of its parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent's legal obligation to support it." *In re Marriage of Heddy*, 535 S.W.2d 276, 279 (Mo.App.1976).

In this case, it is clear that the son became emancipated by his marriage in May, 1983. It is equally clear that the daughter was emancipated, if at all, by implied consent since none of the other means of emancipation had occurred.

The father argues that there are several factors which demonstrated implied emancipation of the daughter. We find none of these factors, individually or cumulatively, to be determinative of the case before us for the following reasons.

First, financial independence was not established. The fact that the daughter was employed and retaining her earnings does not necessarily establish a relinquishment of parental control, *Vinson v. Vinson*, 628 S.W.2d 376, 377 (Mo.App.

1982); but rather, here as in *Vinson*, the facts establish only a license for the daughter to work and retain her earnings. Nor was the daughter shown to be free of parental control by reason of her buying and insuring a car and otherwise spending the money she earned, where the evidence showed that she received the mother's supervision and advice regarding financial matters. Furthermore, we see no inference to be drawn from the fact that the daughter had a checking account particularly where it had been open only one month and it was not shown to have a sizable balance. It is true that the daughter was earning a not insubstantial income at the time of the trial, however, testimony regarding her ability to support herself was presented to the trial court and we must defer to that court's findings on matters of credibility. *Black v. Cole*, 626 S.W.2d 397, 398 (Mo.App.1981). Finally, we note that the fact that the daughter is not required to pay the mother for rent or expenses is consistent with lack of emancipation and inconsistent with the father's claim that the mother is now partially dependent upon the daughter—a claim that is unsupported by the evidence.

Additionally, the father argues that various other actions taken by the daughter were inconsistent with the status of being subject to parental care and control. These too, we find unpersuasive.

The first such act pointed out was the daughter's move, following her high school graduation and prior to beginning college in the fall, to an apartment for a period of approximately four months. There was no evidence that the mother intended to give up the daughter's custody by consenting to her living in an apartment, and the mother testified that she maintained close contact with the daughter while she was living away from home. As the court in *Specking v. Specking*, 528 S.W.2d 448, 452 (Mo.App.1975), noted, it is common practice for college students to move away from home and work part-time.

The daughter's election not to continue her education after completing one semester of college (a decision in which the mother's degree of consent, acquiescence, or mere acceptance cannot be determined from the record) is also a not infrequent occurrence among students, nor one which mandates a finding of emancipation.

The only other point the father raises in support of a finding of emancipation is that the daughter claimed an exemption for herself on her own income tax return. This is irrelevant as to the emancipation issue in that every person filing a return is entitled to claim a personal exemption, and a child claiming a personal exemption on his own return does not preclude an otherwise qualified parent from claiming a dependency exemption for such a child. *See* 26 U.S.C. §§ 151 and 152 and the underlying cases. *See also Calia v. Calia,* 624 S.W.2d 870, 873 (Mo.App.1981) (holding that a court's power to allocate tax exemptions between parents must be exercised in accord with the Internal Revenue Code).

After examining the evidence and the applicable laws we conclude that the trial court did not misstate or misapply the law nor find contrary to the greater weight of the evidence in finding that the daughter was not emancipated, and in having so found, in determining the child support obligation to be continuing and the father to be $9435.00 in arrears on the child support obligation. The latter conclusion is based on the fact that the child support was awarded as a lump-sum for both children. Therefore, despite the son's emancipation, the father's liability continued at the full amount of $255.00 per month since he did not request modification to reduce that amount. *Otten v. Otten,* 632 S.W.2d 45, 48 (Mo.App.1982).

The judgment denying husband's motion to modify is affirmed in accordance with *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976) and Rule 84.16(b).